JAMES F. McKAY III, Chief Judge.
. I,This action arises out of injuries allegedly sustained by a patient in Touro Infirmary (“Touro”) due to the loss of power to the cooling system in the aftermath of Hurricane Katrina. The instant appeal is limited to an insurance issue. Specifically, defendant, Aggreko, LLC (“Aggreko”), the company that contracted to provide emergency generator services to Touro, appeals the April 24, 2015 judgment of the,trial court granting a motion for partial summary judgment in favor of Aggreko’s insurer, American Home Assurance Company (“American Home”). For the following reasons, we reverse and remand.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
Prior to Hurricane Katrina, Touro contracted with Aggreko to supply a backup generator and external fuel tank to provide, among other services, emergency power to the cooling system on portions of the first three floors of the hospital. Ag-greko delivered the generator and fuel tank shortly before Hurricane Katrina made landfall in August 2005. Touro maintains that the tank was not full of fuel as required by the contract. The record reflects that Touro lost power at 3:00 a.m. on August 29, 2005, and that the Aggreko generator failed within hours of being put into service.
| ¡.Plaintiff, David Thebault, filed suit on behalf of his newborn daughter, Melissa Thebault, born prematurely on August 23, 2005, and present in Touro’s Intensive Care - Unit when the hurricane struck. *115 The petition alleges negligence on the part of Touro, Health Care Casualty Limited (Touro’s insurer), Aggreko, and American Home (Aggreko’s insurer), for the child’s exposure to unreasonably dangerous heat and humidity due to the loss of power.
. The American Home Commercial General Liability policy No, GL 359-76-96 (“Policy") issued to Aggreko is at the center of the issues raised herein. The Policy provides for $2,000,000:00 in coverage per occurrence with a $2,000,000.00 aggregate. The Policy also contains a Self-Insured Retention endorsement, which requires Aggreko to satisfy a $50,000.00 deductible per occurrence before American Home becomes obligated under the policy.
American Home filed a motion for partial summary judgment seeking a declaration that Aggreko is responsible for a separate $50,000.00 per occurrence retained limit for each plaintiff with similar lawsuits pending against Touro. The record reflects that approximately foríy-qne (41) separate lawsuits have been filed in the Civil District Court related to the power outage at Touro in the aftermath of Hurricane Katrina.'
Aggreko opposed the motion, arguing that there should only be a single $50,000.00 retained limit because the claims of the various plaintiffs arise out of a single occurrence, i.e., the loss of power. Aggreko maintains that it has already incurred $50,000.00 in expenses within the definition of the Self-Insured Retention, and thus, it has met its obligations under the policy.
| ¡jThe matter came before the trial court on February 6, 2015. Judgment was rendered on April 24, 2015, granting American Home’s • motion for partial summary judgment, and stating the following:
[T]he claims raised by the Plaintiff is [sic] a separate occurrence from the claims of any other Plaintiffs, and since the ... policy issued to Aggreko includes a per occurrence self insured [sic] retention, it requires that Aggreko pay a separate retention for the claims asserted by Plaintiff.
The judgment was designated as final for purposes.-of immediate appeal pursuant to La. C.C.P. art. 1915(B)(1). As stated in the judgment, the. trial court determined that there was no just reason to delay because any delay in the appeal would impact the same issue that was pending in the forty other related lawsuits. ■
Aggreko’s timely appealed followed. Aggreko argues herein that the trial -court erred in finding that Aggreko owed a separate retained limit for each claim/lawsuit, as opposed to a single retained limit for all claims arising out of the single occurrence (the loss of power). We agree.
LAW AND ANALYSIS
The applicable law for reviewing a motion for summary judgment was recently reiterated by this Court in Surcouf v. Darling, 15-0278, pp. 12-13 (La.App, 4 Cir. 10/21/15), 177 So.3d 1085, 1093, as follows:
Appellate courts review a judgment granting or denying a motion for- summary judgment de novo, under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. See C & C Energy, L.L.C. v. Cody Investments, L.L.C., 09-2160, p. 4 (La.7/6/10), 41 So.3d 1134, 1137; Garrison v. Old Man River Esplanade, L.L.C., 13-0869, p. 3 (La.App. 4 Cir. 12/18/13), 133 So.3d 699, 701. A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there- is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966 B(2). Sum *116 mary judgment is favored in Louisiana and is designed to secure the just, Lspeedy, and inexpensive determination of every action. See La. C.C.P. art. 966 A(2).
The party moving for summary judgment bears the burden of showing that no genuine issue of material fact exists. See La. C.C.P. art. 966 C(2); see also Phipps v. Schupp, 14-0672, p. 31 (La.App. 4 Cir. 3/18/15), 163 So.3d 212, 230. If the movant makes a prima facie showing that the motion should be granted, the burden then shifts to the non-moving party to produce evidence demonstrating that a material factual issue remains; the failure to do so mandates granting of the motion. See id. The non-moving party’s response may not rest on the allegations or denials contained in his pleading, but must set forth, by affidavit or otherwise provided by law, specific facts showing that there is a genuine issue of material fact for trial. See La. C.C.P. art. 967 B; Garrison, 13-0869, p. 3, 133 So.3d at 700-01.[1]
With these precepts in mind, we turn to the merits of American Home’s motion for partial summary judgment.
The Policy issued to Aggreko, and in effect from October 1, 2004 to October 1, 2005, is subject to a limit of liability of $2,000,000.00. per occurrence with a $2,000,000.00 aggregate limit. The term “occurrence” is defined in the Policy as “an accident, including continuous or repeated exposure to substantially the same general harmful conditions.”
The Policy also contains a Self-Insured Retention Endorsement, which provides, in pertinent part:
SECTION III: Limits of Insurance is amended to add the following:
The Limits of Insurance for each of the Coverages provided by this policy will apply in excess of a Self-Insured Retention (referred throughout as the “Retained Limit”).
The “Retained Limit”, applying only to damages for “occurrences” or offenses covered under this policy, is $50,000 per “occurrence” or offense. (Emphasis added).
LSubject to additional Allocated Loss Adjustment Expenses[2], the “Retained Limit” is the most an insured will pay for:
A. The sum of all damages under Coverage B because of all “personal and advertising injury” sustained by any one person or organization; or
B. The sum of all damages under Coverage A and medical expenses under Coverage C, because of all “bodily injury” and “property damage” arising out of any one occurrence.
Interpretation of an insurance policy usually involves a legal question that can be resolved properly within the framework of a motion for summary judgment. Bonin v. Westport Ins. Corp., 05-0886, p. 4 (La.5/17/06), 930 So.2d 906, 910; Zeitoun v. Orleans Parish School Bd., 09-1130, p. 3 (La.App. 4 Cir. 3/3/10), 33 So.3d 361, 364. An insurance policy is a contract between the parties and should be con *117 strued employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Cadwallader v. Allstate Ins. Co., 02-1637, p. 3 (La.6/27/03), 848 So.2d 577, 580. When the language of a policy is clear and not ambiguous, the insurance contract must be enforced as written. When the wording is clear, a court lacks the authority to alter or change the terms of the policy under the guise of interpretation. Louisiana Ins. Guar. Ass’n. v. Interstate Fire & Cas. Co., 93-0911, p. 5 (La.1/14/94), 630 So.2d 759, 764. In interpreting an insurance contract our responsibility is to determine the parties’ common intent; such intent is to be determined according to the ordinary, plain, and popular meaning of words used in a policy. Id.; La. C.C. arts.2045 and 2047.
In the present case, the parties do not assert that the wording in the Policy is ambiguous. Rather, they advance different meanings for the term “occurrence” as IfiContained in the Policy. To resolve this conflict, we look to the jurisprudence for guidance.
American Home relies on Lombard v. Sewerage and Water Board of New Orleans, 284 So.2d 905 (La.1973) and its progeny, wherein the courts in exposure cases have applied the “effect” test as opposed to the “cause” test in determining the number of occurrences. In other words, the courts have held that the relevant inquiry is not the cause of the damage but the effect on the injured parties.
American Home argues that the 41 plaintiffs in the separate actions filed against Touro each experienced different exposures to the alleged heat and humidity. More specifically, American Home notes that the various plaintiffs were in the hospital for different reasons, over different periods of time, and in different locations within the building. Thus, American Home maintains that each plaintiff represents a separate occurrence.
The trial court agreed with American Home’s argument, stating on the record:
You have people in different parts of the hospital with different capabilities, different access, different personnel groupings, etcetera, then the effect technically changes for everybody as they are dispersed.
[[Image here]]
My interpretation of the jurisprudence that I reviewed is that the effect issue is the paramount consideration at this point in the law.
[[Image here]]
I think that it is the effect issue that carries the most weight ^pursuant to Lombard and its progenies.[3]
Lombard is the seminal case in Louisiana interpreting the term “occurrence” and its application to repeated exposure cases. In Lombard, a canal construction project that lasted more than one year caused damage to the property of numerous plaintiffs. The applicable insurance policy defined “occurrence” as “an accident or a continuous or repeated exposure to conditions which resulted during the policy period in injury to person or real or tangible property which is accidentally caused.” In construing the “occurrence endorsement,” the Court stated:
*118 ■The word “occurrence” as used in the policy must be construed from the point of view of the many persons whose property was damaged. As to each of these plaintiffs, the cumulated activities causing damage should be considered as one occurrence, though the circumstances causing damage consist of a continuous or repeated exposure to conditions resulting in damage arising out of such exposure. Thus, when the separate property of each plaintiff was damaged by a series of events, one occurrence was involved insofar as each property owner was concerned. Notwithstanding, therefore, that the same causes may have operated upon several properties at the same time resulting in varying degrees of damage it cannot be regarded as one occurrence, but the damage to each plaintiff is a separate occurrence.
Lombard at 915-916.
More recently, this Court applied Lombard in Marshall v. Air Liquide-Big Three, Inc., 11-0990, (La.App. 4 Cir. 9/7/12), 107 So.3d 13, which involved the same definition for the word occurrence as found in the case sub judice. In Marshall, the inhabitants near an acetylene manufacturing facility brought a class action against the manufacturer, the independent lime removal contractor, and their [ ^insurers, alleging that removal of the material from the facility caused airborne lime dust and resulting injuries over a five month period. Following Lombard, we stated:
Like the pile-driving in Lombard, the repeated exposure to the hazardous material during transport from July 2004 through December 2004 constituted an occurrence under the Chartis policy language and under Lombard. Even Appellants acknowledged that it is undisputed “that there was a long-term release or discharge of dust from the Global Lime clean-up operations at the site.” In applying Lombard, the word “occurrence” is construed from the point of view of each plaintiff who was damaged from July 2004 to December 2004.
We find the trial court accurately applied Lombard and its progeny and appropriately found an occurrence to each class member involving continuous' or repeated exposure to carbide lime over a period of time. It is longstanding Louisiana law that when the separate property of each plaintiff was damaged by a series of events, ■ one occurrence was involved insofar as each property owner was concerned. See Lombard, supra. This principle must be applied in this case.
Marshall, 11-0990, pp. 48-49, 107 So.3d at 44.
Aggreko argues that Lombard and Marshall are factually distinguishable because they involved damages caused by a series of events over a significant period of time, whereas the present case involves a single uninterrupted loss of power. We agree. The loss of power (or failure of the generator) in this case constituted a single occurrence, not a series of events occurring over time. Thus, the term occurrence is not determined from the perspective of each plaintiffs individual damages, but rather, from the manner in which it is defined in the policy.
Additionally, we find that the Lombard line of cases are .distinguishable in that they addressed the application of the term “occurrence” within a limits of liability clause rather than a retained limit endorsement, as in this case. Here, pursuant to the Policy, American Home’s liability is limited to $2,000,000.00 per | (¡occurrence with a $2,000,000.00 aggregate. Thus, the overall limit of liability for the plaintiffs’ claims (the main focus in the *119 Lombard cases) is not in .dispute. Here, the Policy provides for a $50,000.00 retained limit per occurrence; it does not provide for a separate retained limit for each plaintiffs claim. American Home could have certainly added such a clause if that was the intent of the parties. Furthermore, the Policy does not provide for an aggregate amount on the retained limit. Thus, under the scenario advanced by American Home, Aggreko’s responsibility for 41 separate retained limits could conceivably exceed the $2,000,000.00 liability limits of the Policy. We can only conclude that this would be an absurd and unintended result.
Based on the clear language of the Policy, the retained limit must be applied per occurrence. Because we have determined that this case involves a single occurrence, we are constrained to conclude that Aggre-ko is responsible for only one retained limit of $50,000.00. Accordingly, we find that the trial court erred in granting the motion for partial summary judgment in favor of American Home on the basis that Aggreko owed a separate retained limit for each plaintiffs claim.
CONCLUSION
For the foregoing reasons, we reverse the judgment of the trial court,- granting the motion for partial summary judgment in favor of American Home.
REVERSED AND REMANDED

. La. C.C.P. art. 966 has been amended multiple times in the past five years. These amendments are not material to the issues raised herein.

. Pursuant to the policy, SECTION V — DEFINITIONS, (as amended and contained within the Self-Insured Retention Endorsement), "Allocated Loss Adjustment Expenses” include attorney's fees, court costs and other defense expenses, which apply against the “Retained Limit”.

. We note that these oral reasons were transcribed in the companion case, Arthur v. American Home (2014-00486), heard by the trial court on the same date as the present case and also on appeal with this Court (2015-CA-0833). The record reflects that the parties in the present case were allowed to adopt the arguments, issues and exhibits presented in the Arthur case. The trial court rendered the same ruling in both cases. However, the trial court’s oral reasons are only contained in the Arthur record.