Judge Terri F. Love
|, This appeal arises from a general subcontracting agreement entered into by a labor staffing company and the company, hiring the staff to work in a “man camp” in Belle Chasse, Louisiana,. following Hurricane Katrina. Two employees filed suit against the hiring company after suffering from carbon monoxide poisoning. The hiring company then sued the staffing company contending that the general subcontracting agreement provided for defense and indemnity.
The trial court found that the staffing company’s insurer owed a duty, to defend the hiring company, but found that the insurance policy did not provide coverage for the hiring company. The trial court then awarded defense costs to the hiring company. The trial court also found that the insurer did not owe the staffing company, its insured, a defense because all of the claims were contractual.
We find that the trial court erroneously concluded that the insurer owed a duty to defend the hiring company because , coverage was excluded under the policy, and the policy was an excess insurance policy, which precluded a duty to defend. Accordingly, we reverse this portion of the trial court’s judgment, and cast the hiring company in judgment for $34,179.45 previously paid by the insurer. We also find that the trial court correctly held that the insurer did not owe a duty to | ¡¡defend the staffing company, as the staffing company could not be liable under the indemnity agreement even if the allegations in the petition were proven.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In the aftermath of Hurricane Katrina, Dynamic Industries, Inc. (“Dynamic”) was hired by Chevron U.S.A., Inc. to build temporary housing units on site at a “man camp” in Belle Chasse, Louisiana. However, Dynamic was in .need of additional workers. Jeff Holmes and Mike Moreno of Dynamic, discussed the staffing needs with Ken Yarborough, the President of Mechanical Contracting Services, Inc. (“Mechanical”). As a labor staffing company, Mechanical agreed to provide Dynamic with additional staff. Mechanical and Dynamic entered into a General Subcontractor Agreement (“GSA”) regarding their agreement. To secure the additional workers, Mechanical then contracted with Mei-tec, Inc. (“Meitec”).
In September 2005, William Spencer and Jean Claude Nfon, both Meitec employees, suffered from carbon monoxide poisoning while sleeping in a recreational vehicle (“RV”) provided for workers on their job site. Mr. Spencer and Mr. Nfon received medical treatment. Mr. Spencer[1] then filed a Petition for Damages against Chevron Corp.; Chevron USA, Inc.; Chevron Phillips Chemical Company, LP; Chevron Phillips Chemical Company, LLC; Chevron Chemical Company, LLC; Chevron Oronite Company, LLC; Dynamic;' and Meitec (collectively “defendants”). Mr. Spencer alleged that the negligence and wrongful conduct of the defendants lead to his carbon monoxide poisoning.
Dynamic then filed a third party demand against Mechanical alleging that the GSA contained defense and indemnity provisions applicable to the suits. | ¡Numerous motions for summary judgment were filed and addressed , by the. trial court. Namely, in 2010, the trial court granted a motion for summary judgment filed by Dynamic, finding that National Union Fire Insurance Company (“National”), Mechanical’s *1057 insurer, had a duty to defend Dynamic based on the GSA. National filed a Motion to Alter, Modify, Reconsider, or Vacate the judgment, which the trial court denied. The trial court also denied a Motion for Partial Summary Judgment filed by Mechanical, finding that National did not owe Mechanical a defense.
Subsequently, XL Specialty Insurance Company (“XL”), Dynamic’s insurer, and Fireman’s Fund Insurance Company (“Fireman’s”), an insurer of Dynamic as a 50% subscriber of the XL policy, filed a Petition of Intervention seeking subrogation to the rights of Dynamic for monies paid regarding Mr. Spencer’s and Mr. Nfon’s suits. Prior to trial, Dynamic filed a motion for partial summary judgment, seeking to set defense costs. The trial court granted the motion and awarded $49,343.05, to be paid by National.
Following a bench trial, the trial court found that: 1) National owed a duty to defend Dynamic, but did not owe a duty to Mechanical; 2) Mechanical’s Staffing Services Policy (“Staffing Policy”) did not provide coverage to Dynamic; 3) National was not liable for bad faith damages; 4) Fireman’s and XL were subrogated to Dynamic’s right of recovery to the extent of payments made; 5) the National Staffing' -Services Liability Policy was a primary policy; and 6) National was entitled to $10,000 set-off in satisfaction of the deductible under the Staffing Policy. Dynamic and Mechanical filed a Motion for Reconsideration and/or Motion for New Trial. National filed a Motion to Tax Costs. The trial court denied the Motion Reconsideration/New Trial, but granted the Motion to Tax |4Costs. National was awarded $5,252.62. Dynamic was awarded $49,343.05, $34,090.43 after subtracting the deductible and National’s award. The trial court found that the above awards satisfied the subrogated rights of Fireman’s and XL. Dynamic filed a Motion and Order for a devolutive appeal. National satisfied the judgment, and then also filed a Motion and Order for a Partial Devolutive Appeal.
Dynamic' contends that the trial court erred by denying it defense and indemnity under the GSA, by denying Mechanical a defense from National, and by concluding Dynamic’s defense costs were previously determined without a separate hearing. National asserts that the trial court erred by determining National owed a duty to defend Dynamic under the Staffing Policy, that it was the primary policy, and by awarding Dynamic $49,343.05 in defense costs.

STANDARD OF REVIEW

Appellate courts review findings of fact using the manifest error or clearly wrong standard of review. Hall v. Folger Coffee Co., 03-1734,- p. 9 (La. 4/14/04), 874 So.2d 90, 98. Thus, we will not set aside a trial “court’s finding of fact unless that finding is clearly wrong in light' of the record reviewed in its entirety.” Id. “In order to reverse a fact finder’s determination of fact, an appellate court must ... (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous.” Coulee v. Glob. Marine Drilling Co., 05-0756, p. 5 (La. 2/22/06), 924 So.2d 112, 116. We “must not re-weigh the evidence or substitute [our] own factual findings because [we] would have decided the case differently.” Id. “Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong.” Id., 05-0756, pp. 5-6, 924 So.2d at 116. “This particular standard of review is based, in 1 spart, -on the trial court’s ability to better evaluate the testimony of live witnesses, compared with an appellate *1058 court’s sole reliance upon a written record.” A.S. v. D.S., 14-1098, p. 9 (La.App. 4 Cir. 4/8/15), 165 So.3d 247, 253. “The manifest error standard of review also applies to mixed questions of law and fact.” Id., 14-1098, p. 10,165 So.3d at 254.
When reviewing legal issues, an appellate court gives “no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and renders judgment on the record.” Banks v. New Orleans Police Dep’t, 01-0859, p. 3 (La.App. 4 Cir. 9/25/02), 829 So.2d 511, 514. “A legal error occurs when a trial court applies the incorrect principles of law and such errors are prejudicial.” Id.

GENERAL SUBCONTRACTOR AGREEMENT

On September 1, 2005, Dynamic and Mechanical entered in the GSA to govern some aspects of the agreement of Mechanical to fulfill Dynamic’s staffing needs. Mechanical was listed as the subcontractor. The GSA provided as follows:
II. Defense and Indemnity
II.1. SUBCONTRACTOR agrees to release, protect, defend, indemnify and hold harmless INDEMNITEE (S), which includes CONTRACTOR and COMPANY and, in addition thereto, all other contractors and subcontractors of either CONTRACTOR or COMPANY, which CONTRACTOR may be required by contract to release, protect, defend, indemnify, hold harmless and/or have named as additional insured(s) against all claims, demands, losses, damages, suits, liabilities, judgments and expenses, including court costs, litigation expenses and attorneys [sic] fees, which may have arisen out of, in connection with or incidental to, directly or indirectly, the performance by SUBCONTRACTOR of any work pursuant to this Agreement or the presence of SUBCONTRACTOR on any property owned, operated or supplied by CONTRACTOR or COMPANY or in which CONTRACTOR or COMPANY has any interest, including but not limited to ingress and egress of vessels Land loading and unloading of cargo, whether or not caused by the sole, joint and/or concurrent negligence, strict liability, unseaworthiness or other legal fault of the INDEMNI-TEE, whether predating the execution of this Agreement or not, with the sole exception that these obligations shall not apply to the extent such claims, demands, losses, damages, suits, liabilities, judgments and expenses arise out of the INDEMNITEE’S intentional or willful conduct.

CONTRACTUAL INTERPRETATION

“The interpretation of an insurance policy is normally a question of law.” Armenia Coffee Corp. v. Am. Nat. Fire Ins. Co., 06-0409, p. 6 (La.App. 4 Cir. 11/21/06), 946 So.2d 249, 253.
“An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.” Cadwallader v. Allstate Ins. Co., 02-1637, p. 3 (La. 6/27/03), 848 So.2d 577, 580. “Interpretation of a contract is the determination of the common intent of the parties.” La. C.C. art. 2045. “The parties’ intent as reflected by the words in the policy determine the extent of coverage.” La. Ins. Guar. Ass’n v. Interstate Fire & Cas. Co., 93-0911 (La. 1/14/94), 630 So.2d 759, 763. “When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.” La. C.C. art. 2046. The words are “given their generally prevailing meaning.” La. C.C. art. 2047. However, “[w]ords susceptible of different meanings must be interpreted as having the meaning that best *1059 conforms to the object of the contract.” La. C.C. art. 2048. “A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective.” La. C.C. art. 2049.
“Each provision in a contract must be interpreted in light of the other 17provisions so that each is given the meaning suggested by the contract as a whole.” La. C.C. art. 2050. “An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion.” La. Ins. Guar. Ass’n, 93-0911, 630 So.2d at 763. “A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.” La. C.C. art. 2053. “Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume.” La. Ins. Guar. Ass’n, 93-0911, 630 So.2d at 763.
“If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer' and in favor of coverage.” Bonin v. Westport Ins. Corp., 05-0886, p. 5 (La. 5/17/06), 930 So.2d 906, 911. “Under this rule of strict construction, equivocal provisions seeking to narrow an insurer’s obligation are strictly construed against the insurer.” Id. An exception to this interpretation applies “if the ambiguous policy provision is susceptible to two or more reasonable interpretations.” Id., 05-0886, p. 6, 930 So.2d at 911.

DUTY TO DEFEND

“Under Louisiana law, the duty to defend is broader than the duty to indemnify.” Maldonado v. Kiewit Louisiana Co., 13-0756, p. 11 (La.App. 1 Cir. 3/24/14), 146 So.3d 210, 218. “The insurer’s duty to de-fénd suits brought against its insured is determined by the allegations of the plaintiffs petition, with the 18insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage.” Alwell v. Meadowcrest Hosp., Inc., 07-376, p. 11 (La.App. 5 Cir. 10/30/07), 971 So.2d 411, 414. See also Maldonado, 13-0756, p. 11, 146 So.3d at 218. “If, assuming all of the allegations of the petition to be true, there would be both coverage under the policy and liability of the insured to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit.” Alwell, 07-376, pp. 4-5, 971 So.2d at 414. See also Am. Home Assur. Co. v. Czamiecki, 255 La. 251, 269, 230 So.2d 253, 259 (La.1969). “[Ujnlike an indemnity agreement, an insured’s duty to' defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy.” Alwell, 07-376, p. 5, 971 So.2d at 414. However, “[i]f a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured.” Maldonado, 13-0756, p. 12, 146 So.3d at 219.

DYNAMIC

Dynamic contends that the trial court erred by denying its request for defense and indemnity from National. Namely, Dynamic asserts that the GSA required a defense and indemnity from National for the claims of Mr. Spencer and Mr. Nfon.

Application of the GSA

We must determine whether the GSA applies. The GSA pertains to those
claims, demands, losses, damages, suits, liabilities, judgments and expenses, in- *1060 eluding court costs, litigation expenses and attorneys [sic] fees, which may have arisen out of, in connection with or incidental to, directly or indirectly, the performance by [Mechanical] of any work pursuant to this Agreement or the presence of [Mechanical] on any property owned, operated or supplied by [Dynamic].
| c,None of Mr. Spencer’s or Mr. Nfon’s petitions for damages or supplemental petitions alleged any fault of Mechanical. In fact, Mechanical was never named as a defendant. The suits arose .out of Dynamic’s allegedly negligent “failure to keep safe, inspect.or properly maintain or use” of the RVs on the job site.
Dynamic states that the GSA applies because Mechanical “was marking up invoices for the work of’ Mr. Spencer and Mr. Nfon. It is undisputed that Mechanical was neither present, nor actively performing work at the job site.
We find this Court’s reasoning in Hall v. Malone, 12-0264 (La.App. 4 Cir. 11/7/12), 104 So.3d 593, analogous. Labor Ready, the indemnitor like Mechanical, functioned as a temporary employment agency and placed the injured plaintiff with Southern Scrap, the defendant and indemnitee like Dynamic. The agreement provided that Labor Ready had to defend and indemnify for liability resulting from “1) Labor Ready’s breach of contract; 2) for acts or failure to act in the performance of the Agreement by Labor Ready or its employees; or 3) from claims in any manner arising from the work to be performed by Labor Ready,” Hall, 12-0264, p. 6, 104 So.3d at 597. However, Southern Scrap asserted “that indemnificátion is required merely because Labor Ready supplied the plaintiff to Southern Scrap as a temporary employee.” Hall, 12-0264, p. 6, 104 So.3d at 597. This Court found “no connexity between the plaintiffs accident and the performance of his work under the Agreement that would impose on Labor Ready an obligation to defend and indemnify.” Id., 12-0264, p. 7, 104 So.3d at 597. In Hall, this Court found that defense and indemnity was not owed for injuries arising out of an automobile accident because holding otherwise “would render the conditions placed on the duty to defend and indemnify within the Agreement meaningless.” 12-0264, p. 8,104 So.3d at 598.
110Like Hall, the GSA contains a similarly worded requirement that the liability must arise from work to be performed by the indemnitor. The Hall plaintiff was injured in an automobile accident, while Mr. Spencer and Mr. Nfon were injured while sleeping in the RV located at the job site. Like this Court reasoned in Hall, Dynamic seeking defense and indemnity based on this is precipitated on the .mere fact that Mechanical provided workers.to Dynamic through Meitec. Like this Court in Hall, we find no connexity between the carbon monoxide poisoning and Mechanical’s staffing services that would require the defense and indemnity of Dynamic. To hold otherwise would require Mechanical to defend and indemnify Dynamic for virtually any liabilities arising from the operation of the job site. Accordingly, we do not find that the claims against Dynamic arose “out of, in connection with or incidental to, directly or indirectly, the performance by [Mechanical] of any work pursuant to this Agreement or the presence of [Mechanical] on any property owned, operated or supplied by [Dynamic].” Therefore, the GSA does not apply under the facts and circumstances of the present case.

Additional Insured

Dynamic next asserts that status as an additional insured affords defense and indemnity. Endorsement No. 15 provides that Dynamic is an additional insured under Coverage B “only with respect to the operations of [Mechanical]; however, no *1061 person or organization added by this endorsement is an Insured for liability arising out of his or its sole negligence.”
Like the present case, the additional insured in Hokenthal v. Sewerage & Water Bd. of New Orleans, 06-0796 (La.App. 4 Cir. 1/10/07), 950 So.2d 55, 84, the plaintiff was covered only “with respect to liability arising out of |n [indemnitor’s] operations.” Also, there were' no allegations of ■wrongdoing or negligence against the in-demnitor, an engineering consultant. Id. This Court found that “[a]bsent such allegations,” the insurer had no obligation to defend the additional insured. Id., 06-0796, p. 50, 950 So.2d at 84. This Court stated that “[n]one of the plaintiffs alleged any damages arising out of [indemnitor’s] operations or premises owned by or rendered to [indemnitor],” Id. “Therefore, there can be no coverage for [indemnitee] as an additional insured under the policy.” Id. We find that the incident did not occur “with respect to the operations of’ Mechanical. As in Hokenthal, Mechanical wás not performing any operations during the time of the incident. Therefore, we find that National did not owe defense and indemnity based on Dynamic’s contention.

Insured Contract

Dynamic also avers that coverage exists because the GSA is a “classic insured contract” as defined by the Staffing Policy. The Staffing Policy provides that contractual liability is excluded, and is defined as follows:
Bodily injury or property damage or wrongful acts for which the Insured is obligated to pay by reason of the assumption of liability in a contract or agreement.
This exclusion does not apply to liability for damages for bodily injury, property damage, or wrongful acts:
1. Assumed in a contract or agreement that is an insured contract, provided the bodily injury or property damage or wrongful act occurs subsequent to the execution of the contract or agreement; or
2. That the Insured would have in the absence of the contract or agreement.
The term “insured contract” was defined as follows:
a.A contract for a lease or premises; however,
i. That portion of the contract for a lease of premises that indemnifies any person or | ^organization for damage by fire to premises while rented to you' or temporarily occupied by you with permission of the owner is not an insured contract;
ii. An insured contract does not include that part of any contract or agreement that indemnifies any person or organization for liability arising out of his or its sole negligence;
b. A sidetrack agreement;
c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
d. An obligation, as required by ordinance, to indemnify a municipality, except -in connection with work for a municipality;
e. An elevator maintenance agreement;
f. That part of any other contract or agreement pertaining to your business including an indemnification of a municipality under which you assume the tort liability of another party to pay for bodily injury or property damage to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.
Paragraph f. does not include that part of any contract or agreement:
*1062 1. That indemnifies a railroad for bodily injury or property damage arising out of construction or .demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;
2. That indemnifies an architect, engineer or surveyor for injury or damage arising out of:
a. Preparing, approving or failing to prepare or approve maps, draw-ingsjjopinions, reports, surveys, change orders, designs or specifications; or
b. Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or
31 Under which the Insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the Insured’s rendering or failure to render professional services, including those listed in 2. above .and supervisory, inspection or engineering services.
In Barton Protective Servs., Inc. v. Coverx Corp., 615 So.2d 438 (La.App. 4th Cir. 1993), this Court examined an insurance policy’s coverage for contractual liability. This Court found contractual liability coverage existed because the parties included a contractual liability endorsement. Id., 615 So.2d at 440. Contrary to Barton, the Staffing Policy does not include an endorsement for contractual liability. In fact, the Staffing Policy specifically excludes contractual liability. However, an “insured contract” is an exception to the contractual liability exclusion. While there is no endorsement or coverage provision providing for the coverage of insured' contracts contained in the policy, to find that insured contracts were not covered would render the provision meaningless or ineffective, which contravenes the guidelines of interpretation. See La. C.C. art. 2049. Accordingly, we find that Dynamic was owed a defense based on the “insured contract” exception in the contractual liability exclusion.

Exclusions

Nonetheless, regardless of the applicability of the GSA and coverage 114pursuant to an insured contract, we find unambiguous exclusions within the Staffing Policy that serve to- deny Dynamic’s demand for defense. Firstly, Exclusion F. Aircraft, Auto or Watercraft states that the policy does not provide coverage (pertains to Coverages A and B) for:
Bodily injury or property damage or wrongful acts arising out of the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft owned or operated by or rented or loaned to any Insured. Use includes operation and loading or unloading.
This exclusion does not apply to:
1. Bodily injury or property damage arising out of watercraft while ashore on premises you own or rent;
2. Bodily injury or property damage arising out of watercraft you do not own that is:
a. Less than 26 feet long; and
b. Not being used to carry persons or property for a charge;
3. Bodily injury or property damage arising out of parking an auto on, or on the ways next to, premises you own or rent, provided the auto is not owned by or rented or loaned to you or the Insured;
4. Liability assumed under any insured contract for the ownership, maintenance or use of aircraft or watercraft; or
*1063 5. Bodily injury or property damage arising out of the operation of any of the equipment listed in paragraph f. 2. or f. 3. of the definition of mobile equipment.
An “auto” is defined as “a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But auto does not include mobile equipment.”
Mr. Spencer and Mr. Nfon were injured while relaxing and sleeping in an RV provided for them at the job site. We find that the RV fits within the auto exclusion because it is “a land motor vehicle.” Further, the Louisiana Supreme Court stated that “[t]he jurisprudence has consistently found that -use’ of a vehicle l1tiis not limited to ‘operation’ of a vehicle. Bernard v. Ellis, 11-2377, p. 11 (La. 7/2/12), 111 So.3d 995, 1003. The Court held that “‘use’ has a broader meaning than operation of the vehicle and generally includes any use of a vehicle related to its inherent purpose.” Id. An inherent purpose of an RV, besides being driven, is to accommodate resting and/or sleeping passengers. As Mr. Spencer and Mr. Nfon were resting and/or sleeping passengers when they suffered from carbon monoxide poisoning, we find that the auto exclusion precludes coverage whether by status as an additional insured or otherwise. Also, because “the facts showed that coverage was excluded, there was no obligation on the part of’ National “to defend” Dynamic. Jackson v. Lajaunie, 270 So.2d 859, 864 (La.1972).
Secondly, even if the auto exclusion did not apply, National’s policy included an “Other Insurance” provision, which precluded a duty to defend and read as follows:
If other valid and collectible insurance is available to the insured for a loss we cover resulting from bodily injury, property damage, personal injury, advertising injury or wrongful act, our obligations are limited as follows:
1. Primary Insurance
This insurance is primary except when 2. below applies. [I]f this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, WE shall share with that other insurance by the method described in 3. below.
2. Excess Insurance
This insurance is excess over any of the other insurance, whether primary, excess, contingent, or on any other basis:
[[Image here]]
c. If the loss arises out of the maintenance or use of aircraft, “autos” or watercraft to the extent not subject to Exclusion H. of Section III. EXCLUSIONS FOR COVERAGE A AND B.
When this insurance is excess, we shall have no duty under Coverages A, B, C to defend |lflany claim or suit if any other insurer has a duty to defend you against that claim or suit. If no other insurer defends, we will undertake to do so, but we will be entitled to your rights against all those other insurers. When this insurance is excess over other insurance we shall pay only .our share of the amount of the loss, if any, that exceeds the sum of ....
Dynamic contends that the provision is irrelevant because the GSA provides that “[a]ll such policies shall: 2. Be primary in relation to all insurance policies of all IN-DEMNITEES, with deletion of any ‘Other Insurance’ provisions .... ”
“[T]he contract of insurance is the law between the parties.” Labbe v. Mt. Beacon Ins. Co., 221 So.2d 354, 357 (La.App. 4th Cir.1969). However, insurance policies can *1064 be “amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy.” La. R.S. 22:881. National’s policy stated that the “Policy can only be changed by a written endorsement we issue and made [sic] part of this Policy.”
It is undisputed that National was not a party to the GSA. National did not assist in negotiating the terms of the GSA. Mechanical’s Staffing Policy with National was confected prior to the execution of the GSA and there are no written endorsements executed by National asserting that the GSA is part of the Staffing Policy. As such, the GSA is not the law between National and Dynamic, and the GSA does not supersede the insurance policy. Dynamic was defended and indemnified by its own insurers, XL and Fireman’s. Therefore, the “Other Insurance” provision remained intact in the Staffing Policy and functioned as excess to Dynamic’s own policies. The GSA cannot be enforced against National to usurp the power of the clearly worded provision. The “Other Insurance” provision clearly states that when the Staffing Policy is the excess policy, National | t7has no duty to defend.[2]
Accordingly, we find that National did not owe a duty to defend or indemnify Dynamic, and that coverage was not provided in the Staffing Policy. As such, the trial court’s judgment is reversed in part.

MECHANICAL

Mechanical contends that the trial court erred in holding that National had no duty to defend Mechanical. Mr. Spencer and Mr. Nfon never filed suit against Mechanical, or alleged any negligence on their part. Mechanical was brought in as a third party defendant because Dynamic demanded defense and indemnity based on the GSA.
In the present matter, Dynamic’s third party petition against Mechanical governs the determination of National’s alleged duty to defend Mechanical. If all of the allegations in Dynamic’s petition are proven, Mechanical would not be subject to liability from the GSA. The GSA applied to claims arising “out of, in connection with or incidental to, directly or indirectly, the performance by [Mechanical] of any work pursuant to this Agreement or the presence of [Mechanical]- on any property owned, operated or supplied by [Dynamic].” Mechanical was not performing any work when the incident occurred. Accordingly, we find that the GSA did not apply and Mechanical was not owed a defense from National.[3] See .Mason v. Stauffer Chemical Co., 461 So.2d 589, 591 (La.App, 1 Cir.1984).

DYNAMIC’S DEFENSE COSTS

Having found above that National did not owe Dynamic a duty to defend, | t ^indemnify, or provide coverage, we reverse the trial court’s award of defense costs, and cast Dynamic in judgment for $34,179.45 previously paid by National.

DECREE

For the above-mentioned reasons, we find that the trial court erred by finding that National owed a duty to defend Dynamic. The trial court did not err by finding that National’s Staffing Policy did not provide coverage to Dynamic based on its liability for Mr. Spencer’s and Mr. Nfon’s damages. Mechanical was not owed a defense by National because the GSA did not apply. Lastly, as we found that no duty to *1065 defend was owed to Dynamic, Dynamic is cast in judgment for the $34,179.45 paid by National. The judgments of the trial court are affirmed in part, reversed in part, and rendered.
AFFIRMED IN PART; REVERSED IN PART
LANDRIEU, J., CONCURS IN THE RESULT.

, Mr. Nfon subsequently filed a separate suit. The two suits were later consolidated. Neither is at issue in the present appeal.

. Whether Mechanical failed to comply with an obligation to obtain an endorsement from National is another matter, and not subject of this appeal.

. This Court also notes that "[a]ny suit or claim brought by one Insured against any other Insured covered under this Policy will not be defended,” in regards to Coverage A.