CHOICE FOUNDATION    *   NO. 2021-CA-0431

VERSUS       *

             COURT OF APPEAL

LAW INDUSTRIES, LLC, ET  *
AL.
             FOURTH CIRCUIT

         *

             STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-04985, DIVISION "J"
Honorable D. Nicole Sheppard
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *

(Court composed of Judge Terri F. Love, Judge Joy Cossich Lobrano, Judge
Tiffany Gautier Chase)

Jonathan S. Forester
Donald C. Douglas, Jr.
Robyn A. Brown
RIESS LeMIEUX LLC
1100 Poydras Street, Suite 1100
New Orleans, LA 70163

   COUNSEL FOR DEFENDANT/APPELLANT

Christian B. Bogart
Joseph E. Bearden, III
DUPLASS ZWAIN BOURGEOIS PFISTER WEINSTOCK & BOGART, APLC
Three Lakeway Center, Suite 2900
3838 North Causeway Boulevard
Metairie, LA 70002

   COUNSEL FOR THIRD PARTY DEFENDANT/APPELLEE

               **AFFIRMED**

               **MARCH 2, 2022**

This is an insurance coverage dispute. Defendant/appellant, Tuna Construction, LLC ("Tuna"), appeals the May 3, 2021 judgment of the district court, granting the motion for summary judgment in favor of third party defendant/appellee, StarStone National Insurance Company ("StarStone") and dismissing Tuna's third party demand against StarStone.

## FACTS AND PROCEDURAL HISTORY

This litigation arises from construction work, which allegedly resulted in asbestos contamination at Lafayette Academy Charter School (the "School"), which is operated by Choice Foundation ("Choice"). During Phase I of construction, Tuna was the general contractor. Tuna entered into a subcontract with V. Keeler & Associates, Inc. ("Keeler"), which called for Keeler to perform asbestos abatement work. Pursuant to the Tuna-Keeler subcontract, Keeler agreed to have Tuna listed as an additional insured under Keeler's insurance policies, including the StarStone policy, which was a commercial umbrella liability insurance policy. On May 10, 2019, Choice and the Orleans Parish School Board

1

("OPSB") filed suit against numerous construction defendants, including Tuna and Keeler, seeking damages for contamination of equipment, remediation expenses, damages for disruption of operations, and relocation expenses from the removal of asbestos-containing materials from the School's campus. On July 26, 2019, Tuna filed a cross-claim against Keeler and third party demand against StarStone and Keeler's other insurers. Tuna alleged that Keeler and its insurers, including StarStone, owed Tuna defense, indemnity, and additional insured status for the claims made against Tuna by Choice and OPSB.

On January 14, 2021, StarStone filed a motion for summary judgment seeking dismissal of Tuna's third party demand.[1] StarStone argued that its policy provided no insurance coverage or duty to provide defense or indemnity for the underlying lawsuit against Tuna, because the StarStone policy contained an asbestos exclusion. On March 25, 2021, a hearing went forward on the summary judgment motion. On May 3, 2021, the district court rendered summary judgment in StarStone's favor and dismissed all of Tuna's claims against StarStone in Tuna's third party demand. This appeal followed.

Tuna raises the following assignments of error on appeal:

1. The District Court erred in granting StarStone's Motion for Summary Judgment as the claims against Tuna Construction, LLC, are not unambiguously excluded under the policy language.

---

[1] StarStone (the appellee herein) and another insurer, StarStone Specialty Insurance Company, jointly filed the motion for summary judgment at issue in this appeal. Summary judgment was denied in part as to StarStone Specialty Insurance Company, which no party raises as error on appeal.

2. The District Court erred in granting StarStone's Motion for Summary Judgment as the petition included broad claims including claims of negligence against Tuna Construction, LLC, which are covered claims under the policy language.

3. The District Court erred in granting StarStone's Motion for Summary Judgment as the "eight corners rule" was incorrectly applied in this matter.

## DISCUSSION

**Motion for Summary Judgment**

An appellate court reviews a district court's ruling on a motion for summary judgment using the *de novo* standard of review. *Smith v. H & E Tugs LLC*, 18-0424, p. 3 (La. App. 4 Cir. 10/24/18), 258 So.3d 159, 161. The summary judgment procedure is favored, and "[a]fter an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(2)-(3). The applicable burden of proof is as follows:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

La. C.C.P. art. 966(D)(1).

3

**Duty to Defend**

Tuna's assignments of error require this Court to examine whether StarStone owes a duty to provide Tuna with a defense. Tuna argues that the petition contains claims that StarStone's policy does not unambiguously exclude; thus, under Tuna's argument, StarStone must provide Tuna with a defense to the underlying lawsuit.

"Interpretation of an insurance policy usually involves a legal question that can be resolved properly within the framework of a motion for summary judgment." *Thebault v. Am. Home Assur. Co.*, 15-0800, p. 5 (La. App. 4 Cir. 4/20/16), 195 So.3d 113, 116 (citing *Bonin v. Westport Ins. Corp.*, 05-0886, p. 4 (La. 5/17/06), 930 So.2d 906, 910) (other citation omitted). "An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Thebault*, 15-0800, p. 5, 195 So.3d at 116-17 (citing *Cadwallader v. Allstate Ins. Co.*, 02-1637, p. 3 (La. 6/27/03), 848 So.2d 577, 580). "The extent of coverage is determined by '[t]he parties' intent as reflected by the words in the policy,' and '[s]uch intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning.'" *Perniciaro v. McInnis*, 18-0113, p. 10 (La. App. 4 Cir. 9/7/18), 255 So.3d 1223, 1231 (internal quotations and citations omitted). "Insurers can limit their liability absent a conflict with statutory provisions or public policy." *Id.* (citations omitted). "The insurer has the burden of proving that a claimed loss falls within the policy exclusion." *Id.* (citations omitted).

"The duty to defend arises solely under contract." *Arceneaux v. Amstar Corp.*, 15-0588, p. 12 (La. 9/7/16), 200 So.3d 277, 286 (quotation omitted). "Under Louisiana law, the duty to defend is broader than the duty to indemnify." *Spencer*

4

*v. Chevron Corp.*, 16-0174, p. 7 (La. App. 4 Cir. 9/28/16), 202 So.3d 1055, 1059 (quotation and citation omitted). "The issue of whether a liability insurer has the duty to defend a civil action against its insured is determined by application of the 'eight-corners rule,' under which an insurer must look to the 'four corners' of the plaintiff's petition and the 'four corners' of its policy to determine whether it owes that duty." *Plaia v. Stewart Enterprises, Inc.*, 14-0159, p. 35 (La. App. 4 Cir. 10/26/16), 229 So.3d 480, 504 (quoting *Mossy Motors, Inc. v. Cameras Am.*, 04-0726, p. 6 (La. App. 4 Cir. 3/2/05), 898 So.2d 602, 606) (internal citation omitted). "[T]he factual allegations of the plaintiff's petition must be liberally interpreted to determine whether they set forth grounds which raise even the possibility of liability under the policy." *Id.*

"If, assuming all of the allegations of the petition to be true, there would be both coverage under the policy and liability of the insured to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit." *Spencer*, 16-0174, p. 8, 202 So.3d at 1059 (citations omitted). "[E]ven though a plaintiff's petition may allege numerous claims for which coverage is excluded under an insurer's policy, a duty to defend may nonetheless exist if there is at least a single allegation in the petition under which coverage is not unambiguously excluded." *Mossy Motors, Inc.*, 04-0726, p. 6, 898 So.2d at 606 (citation omitted). "However, '[i]f a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured.'" *Spencer*, 16-0174, p. 8, 202 So.3d at 1059 (quotation and citation omitted).

To resolve the particular issue before us, we must consider the language of the StarStone policy along with the petition. Section I of the policy outlines the coverage provided, stating in relevant part:

5

**SECTION I – COVERAGE**

**A.** We will pay on behalf of the insured the **ultimate net loss** in excess of the **retained limit** which the **Insured** becomes legally obligated to pay as **damages** because of **bodily injury**, **property damage** or **personal and advertising injury** to which this insurance applies.

(Emphasis in original).

The StarStone policy contains a broad asbestos exclusion, which reads:

**SECTION IV – EXCLUSIONS**

This insurance does not apply to any liability, **damage**, loss, cost or expense:
…
B. ASBESTOS

Arising out of:

1. The manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers, asbestos dust or products or materials containing asbestos;

2. Any obligation of any **insured** to indemnify any party because of **damages** arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers, asbestos dust or products or materials containing asbestos; or

3. Any obligation to defend any **suit** or **claim** against any **insured** that seeks **damages** if such **suit** or **claim** arises as the result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers, asbestos dust or products or materials containing asbestos.

(Emphasis in original).

According to Tuna's argument, the district court improperly applied the exclusion and disregarded StarStone's duty to defend Tuna. Tuna contends that the petition contains allegations that are outside the scope of the exclusion and for

6

which StarStone owes a duty to defend Tuna, regardless of the outcome of this lawsuit. Tuna relies on the principle that, if the petition contains one allegation for which the policy provides coverage to Tuna, StarStone owes Tuna a duty to defend for the entire lawsuit. *See Mossy Motors, Inc.*, 04-0726, p. 6, 898 So.2d at 606. Tuna points out that the petition never alleges Tuna self-performed any asbestos work. Tuna argues that the petition's allegations as to Tuna included claims of Tuna's negligence in completing the project separate and apart from any asbestos work. Tuna sets forth seven allegations within the petition, which Tuna claims the asbestos exclusion does not unambiguously bar coverage:

5.

Defendant, Tuna, is a Louisiana limited liability company doing business in New Orleans, Louisiana. Tuna is a general contractor that RSD [Recovery School District] contracted with to perform the Phase 1 Work, which was for various improvements, including, but not limited to, replacing windows, at the [School] during the 2016-2017 school year.

…

22.

Choice and OPSB assert that the faults, acts, opinions, and/or negligence of the Defendants with respect to the construction at the [School] caused and/or contributed to the damages suffered by Choice and OPSB.

…

27.

During construction, Tuna and its subcontractors failed to submit necessary reports.

…

7

29.

During that construction, Choice received complaints from faculty regarding smells and sounds that disrupted teaching and caused concern for their health.

…

34.

The failure of [other named defendants], Tuna, and Keeler to properly oversee, manage, coordinate, and/or complete the project in a safe and compliant manner led to Choice's and OPSB's damages.

…

56.

Tuna was negligent, causing damage to Choice and OPSB by, including, but not limited to, failing to follow generally accepted construction practices and by negligently performing renovations/work, by failing to properly oversee and undertake the construction of its work, by causing and/or contributing to delays, and by failing to adhere to standards for a reasonably prudent contractor in the Orleans Parish area.

…

81.

Due to the failure of Defendants to complete a scheduled renovation project in a safe and timely manner at the [School], OPSB has also incurred and is continuing to incur damages.

…

Tuna argues that these are claims of general construction negligence, administrative and communication issues, wherein none of these allegations use the word "asbestos;" thus, Tuna argues, coverage is not unambiguously excluded, and StarStone owes a duty to defend Tuna. We disagree, as all allegations of Tuna's negligence within the petition are asbestos-related. While the petition states that Tuna was contracted for "various improvements" including "replacing

8

windows," no negligence is alleged or damages identified with respect to windows or any other specific improvements aside from asbestos abatement. With respect to the individual paragraphs that Tuna pinpoints within the petition, all allegations of negligent construction, renovation, project management or completion; "smells and sounds;" failure to submit reports; and project delays all refer to asbestos-related work when read together with and in context with the surrounding paragraphs. Specifically, Choice and OPSB alleged:

1.

… Tuna contracted with [Keeler] to remove asbestos-containing floor tiles from four classrooms on the third floor of the [School] in March 2016 (the "Phase 1 Work"). The negligence of [other construction defendants], Tuna, and Keeler led to deficiencies as outlined by the Louisiana Department of Environmental Quality in a July 31, 2017 report. Notably, that report was not given to Choice until nearly a year after that date. Choice and OPSB were the subject of negative media attention. Many parents and students were upset that they were not notified of the report earlier, which Choice understands led to some students switching to other schools.
…

25.

The [School], like many schools and buildings in New Orleans, contains asbestos, which is naturally occurring in the environment. Asbestos has a risk of being harmful, however, if the proper precautions are not taken and there is exposure for prolonged periods of time. Here, the Defendants knew or should have known of proper precautions but failed to adhere to them.
…

30.

Choice later learned that on March 22, 2017, Louisiana Department of Environmental Quality

("LDEQ") visited the [School] and observed multiple violations, which were outlined in an LDEQ Asbestos Demolition/Renovation Compliance Inspection Report. These violations were attributable to [] Keeler's negligence....[2]

32.

Abatement work had to stop while Tuna, [] Keeler, and [other construction defendants] addressed the violations....

…

---

[2] The petition sets forth an excerpt of the LDEQ report as follows:

AREAS OF CONCERN

LAC 33:111.5151.F.3.h. No demolition or renovation activity that disturbs RACM or ACDA shall be conducted at a facility regulated by this Subsection unless at least one asbestos abatement contractor/supervisor trained in accordance with Subsection P of this Section is physically present. An accredited supervisor was not initially present at the time of inspection. The "acting" supervisor was found to be unaccredited with falsified paperwork.

LAC 33:111.5151.J.1.a.ii. Discharge no visible emissions to the outside air from collection, mixing, wetting, and handling operations, or use the methods specified by Subsection O of this Section to clean emissions containing particulate asbestos material before they escape to, or are vented to, the outside air. Boot prints were visible on the floor between the two containment areas. Children were walking the halls between the two containment areas.

LAC 33:111.5151.F.3.a.iii. (a). The RACM and any ACD shall be adequately wet, and contained in leak-tight, clear transparent wrapping. The wrapped flooring sections were not wet.

LAC 33:111.5151.J.1.a.iii. After wetting, seal all asbestos-containing waste material in leak-tight, clear, transparent containers (i.e., bags) while wet; or, for materials that will not fit into containers without additional breaking, put materials into leak-tight, clear, transparent wrapping, ensuring that the ACWM is securely wrapped and sealed. Only some asbestos containing waste materials were wet. The large sections were not wet or leak-tight.

LAC 33:111.5151.J.1.a.iv. For asbestos-containing waste material to be transported off the facility site, label containers or wrapped materials with the name of the waste generator and the location at which the waste was generated. Generator labels observed on bags of material on 3/22/2017 were not legible. Large sections of ACM that had been removed had no generator label at all. A follow-up inspection on 3/27/2017 revealed that generator labels still were not being used on every bag and removed section as required.

10

52.

Due to the negligence of the Defendants, the work had to cease, and the [School's] first and second floors contain unsafe asbestos levels and will require remediation.

…

71.

Choice stored furniture and equipment of significant value including, but not limited to, Choice's computer servers on the floors, which were contaminated and must be replaced. Moreover, the play yard and additional items, including those in the large metal storage units in which Choice stored items from the first floor, were contaminated. Thus far, Choice authorized an expenditure of at least $1.3 million to replace contaminated furniture and equipment.

…

79.

Accordingly, Choice seeks all damages resulting from the Defendants' actions, including, but not limited to, (1) the amounts paid to replace furniture, equipment, classroom materials, and other items that were contaminated and to be replaced; (2) extra expenses it incurred to relocate[] the [School] to the Kerlerec Campus; and (3) lost profits to be calculated.

…

Assuming "**all allegations** of the petition to be true," if there would be (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the lawsuit. *Arceneaux*, 15-0588, p. 5, 200 So.3d at 282 (emphasis added). We find that, under this standard, to assume all allegations are true, we cannot look at Tuna's cited allegations in a vacuum. Even construing said allegations liberally, it cannot be said that the petition's claims of construction negligence and administrative and communication issues are separate and distinct from asbestos-related negligence claims. Lacking any distinction, these claims are unambiguously excluded from coverage, and StarStone owes Tuna no duty to defend against the

11

claims made in the lawsuit. Summary judgment dismissing Tuna's third party demand against StarStone was properly granted.

## CONCLUSION

Accordingly, for the reasons set forth herein, we affirm the judgment of the district court.

**AFFIRMED**