898 So.2d 602 (2005)
MOSSY MOTORS, INC.
v.
CAMERAS AMERICA.
No. 2004-CA-0726.
Court of Appeal of Louisiana, Fourth Circuit.
March 2, 2005.
Rehearing Denied April 15, 2005.
*604 Dennis J. Phayer, Burglass & Tankersley, L.L.C., Metairie, LA, for Appellant, Canal Indemnity Company.
Jerry B. Jordan, Jordan Law Firm, and Charles M. Raymond, Taggart, Morton, Ogden, Staub, Rougelot & O'Brien, L.L.C., New Orleans, LA, for Defendant/Appellee, Cameras America.
Joseph E. Lee III, Geiger, Laborde & Laperouse, L.L.C., New Orleans, LA, for Plaintiff/Appellee.
(Court composed of Judge JAMES F. McKAY III, Judge DENNIS R. BAGNERIS SR., Judge EDWIN A. LOMBARD).
JAMES F. McKAY III, Judge.
The appellant, Canal Indemnity Company (Canal), appeals the judgment of the trial court granting a joint motion for summary judgment filed by Mossy Motors Inc. (Mossy), and Cameras America L.L.C. (Cameras) and finding that Canal has a duty to defend the allegations in the petition for damages filed by Mossy Motors, Inc., by providing conflict counsel to Cameras America, L.L.C., Boyd Baker, and Sarah Baker (hereafter collectively referred to as Cameras).

FACTS AND PROCEDURAL HISTORY
The instant matter arises out of the underlying principal demand in which Mossy Motors, Inc. sued Cameras, alleging that Mossy entered into an agreement with Cameras to install and service surveillance video equipment at 1331 South Broad Street, the location of the Mossy dealership. This agreement was entered into on June 30, 2000. The agreement was a five-year capital lease of video surveillance equipment, which included a monitoring service to protect the vehicles on the property. The monitoring fee was for $3,924.00 per quarter and $932.97 per month for the lease of the cameras. Mossy alleges that as part of the monitoring service agreement Cameras is supposed to continuously monitor the premises after the dealership closes and report any breach or suspicious activities to the New Orleans Police Department and/or Mossy.
On or about October 26-27, 2001, a series of burglaries occurred at the Mossy property that included the stealing of nine vehicles and the damaging of the fence. Mossy asserts that on this particular night Cameras' failure to properly monitor the premises resulted in the accomplishment of these thefts. On December 14, 2001, Mossy filed a petition for damages against Cameras in Civil District Court for the Parish of Orleans, State of Louisiana in Case No.XXXX-XXXXX, Division "K" Section 14. Subsequent to this suit being filed Cameras, who was served via the Louisiana Long Arm Statute, alleged that it sent the suit documents to a Mr. Dearie, the attorney for Canal. No court appearance was made on Cameras' behalf, which resulted in Mossy taking a preliminary default against Cameras on March 5, 2002. A default judgment was entered into the record on March 22, 2002. Cameras then sought an explanation from Mr. Dearie but none was obtained. Cameras then contacted and retained private counsel for the defense of the present lawsuit. Cameras' counsel sought and successfully obtained a judgment vacating the default judgment after appealing the trial court's denial of the motion to vacate. This Court reversed the trial court's judgment in case No.XXXX-XXXX. Following this action Cameras filed a suit in the United States District Court for the Eastern District of Louisiana in a civil action in case No. 03-678, Section "C" in Boyd Baker, ET AL v. Harold Dearie, ET AL., seeking damages against Harold Dearie for legal malpractice, and negligence against Regina Richard, the Burghardt *605 Insurance Agency and Canal. Canal filed an answer in the federal litigation. On August 29, 2003, the federal district court denied Canal's motion for summary judgment finding that it had a duty to defend Cameras.[1] Despite the federal suit being filed, Cameras continued to seek and demand defense to the Louisiana litigation from Canal's counsel. Canal's counsel advised Cameras that the policy only covered such things as negligent installation and repair. On February 5, 2004, Mossy filed its first supplemental and amending petition naming Canal as a defendant and alleging coverage for Cameras. On March 5, 2004, the trial court granted Mossy and Cameras' joint motion for summary judgment finding a duty to defend.

STANDARD OF REVIEW
In Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, the Louisiana Supreme Court discussed the standard of review of a summary judgment as follows:
Our review of a grant or denial of a motion for summary judgment is de novo. Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342 (La.1991). A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). This article was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action...." La. C.C.P. art. 966(A)(2). In 1997, the article was further amended to specifically alter the burden of proof in summary judgment proceedings as follows: The burden of proof remains with the movant. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2). 99-2181, 99-2257, p. 7, 755 So.2d at 230-31.
See also Shelton v. Standard/700 Associates, XXXX-XXXX (La.10/16/01), 798 So.2d 60.

ASSIGNMENT OF ERROR
Canal argues that the trial court erred in granting Cameras' motion for summary judgment and finding that it had a duty to defend the allegations against the insured, which fall outside the scope of the coverage, afforded by the policy.

INTERPRETATION OF INSURANCE CONTRACTS
An insurance policy is a contract between the parties, and should be construed employing the general rules of interpretation of contracts. Blackburn v. National Union Fire Ins. Co. of Pittsburgh, 00-2668, pp. 5-6 (La.4/3/01), 784 So.2d 637, 641. Words in an insurance policy must therefore be given their generally prevailing meaning, unless they have acquired a technical meaning, in which case the technical meaning applies. La. C.C. art.2047; Succession of Fannaly v. Lafayette Ins. Co., 01-1355, p. 3 (La.1/15/02), 805 So.2d 1134, 1137. An insurance policy is construed as a whole, and each provision in the policy must be interpreted in light of the other provisions. *606 Id., 01-1355 at pp. 3-4, 805 So.2d at 1137. If an ambiguity remains after applying the general rules of contractual interpretation, the ambiguous policy provision is construed against the insurer who furnished the policy's text and in favor of the insured. Id., 01-1355, at p. 4, 805 So.2d at 1138.
An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Magnon v. Collins, 98-2822, p. 7 (La.7/7/99), 739 So.2d 191, 196. Likewise, a court should not strain to find ambiguity in a policy where none exists. Gaylord Chemical Corp. v. Propump, Inc., 98-2367, at p. 4, (La.App. 1 Cir. 2/18/2000) 753 So.2d 349, 352. These principles of interpretation are generally accepted and followed in all jurisdictions of this country.

DUTY TO DEFEND STANDARD
Louisiana has a long history of cases, which assert an insurer's duty to defend its insured. Generally the insurer's obligation to defend suits against its insured is broader than its liability for damage claims. American Home Assur. Co. v. Czarniecki, 255 La. 251, 230 So.2d 253 (La.1969). The insurer's duty to defend suits is determined by the allegations of the petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. Id. The allegations of the petition should be liberally construed in determining whether they set forth grounds which bring the claims within the scope of the insurer's duty to defend the suit against its insured. Id. The duty to defend is not dependent upon the outcome of the suit. Id. Also See Rando v. Top Notch Properties, L.L.C., XXXX-XXXX, (La.App. 4 Cir. 6/2/04) 879 So.2d 821.
A liability insurer's duty to defend and the scope of its coverage are separate and distinct issues. Dennis v. Finish Line, Inc., 93-0638 (La.App. 1 Cir.3/11/94), 636 So.2d 944, 946. It is likewise well-recognized that the obligation of a liability insurer to defend suits against its insured is generally broader than its obligation to provide coverage for damages claims. Steptore v. Masco Construction Co., Inc., 93-2064, p. 8 (La.8/18/94), 643 So.2d 1213, 1218. The issue of whether a liability insurer has the duty to defend a civil action against its insured is determined by application of the "eight-corners rule," under which an insurer must look to the "four corners" of the plaintiff's petition and the "four corners" of its policy to determine whether it owes that duty. Vaughn v. Franklin, 00-0291, p. 5 (La.App. 1 Cir.3/28/01), 785 So.2d 79, 84. Under this analysis, the factual allegations of the plaintiff's petition must be liberally interpreted to determine whether they set forth grounds which raise even the possibility of liability under the policy. Id. In other words, the test is not whether the allegations unambiguously assert coverage, but rather whether they do not unambiguously exclude coverage. Id. Similarly, even though a plaintiff's petition may allege numerous claims for which coverage is excluded under an insurer's policy, a duty to defend may nonetheless exist if there is at least a single allegation in the petition under which coverage is not unambiguously excluded. Employees Ins. Representatives, Inc. v. Employers Reinsurance Corp., 94-0676, p. 3 (La.App. 1 Cir. 3/3/95), 653 So.2d 27, 29.
Generally, an insurer's duty to defend lawsuits against its insured is broader than its liability for damage claims. The duty to defend is determined by the allegations *607 of the plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. Yount v. Maisano, 627 So.2d 148 (La.1993); Matheny v. Ludwig, 32,288 (La.App. 2 Cir.9/22/99), 742 So.2d 1029. Thus, assuming all the allegations of the petition to be true, if there would be both coverage under the policy and liability to the plaintiff, the insurer must defend the lawsuit regardless of its outcome. Yount, supra; Matheny, supra. The duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy. Steptore v. Masco Const. Co., Inc., 93-2064 (La.8/18/94), 643 So.2d 1213; Yarbrough v. Federal Land Bank of Jackson, 31,815 (La.App. 2 Cir.3/31/99), 731 So.2d 482
Canal submits that the duty to provide conflict counsel or a duty to defend Cameras against the Mossy petition fall outside the scope of the provided coverage in the policy. The main issue for this Court to determine, based on applicable jurisprudence, is whether the policy in question unambiguously excludes coverage not whether the policy excludes coverage. We are mindful that the issue of Canal's duty to indemnify is premature and non-justiciable at this juncture in this litigation and that the duty to defend is not dependent upon the outcome of the underlying litigation. However, in order to make a determination on the issue of duty to defend, this court must make certain preliminary coverage determinations. In the present case, the policy provides in pertinent part:
Section 1-Coverage
Coverage A. Bodily injury and Property Damage Liability
1. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking "bodily injury" or "property damage", at our discretion, investigate any "occurrence" and settle any claim on the "suit" that may result.
In the instant suit Mossy contracted with Cameras to install, service and monitor surveillance cameras for its premises on South Broad Street. On September 14, 2001, Canal issued a policy to Cameras as an indemnity policy with the same effective date. On October 26, 2001, Mossy, a monitoring client of Cameras, sustained a burglary at the car lot. On November 5, 2001, Mossy sent a demand letter to Cameras alleging that the negligence of Cameras in the monitoring of its premises led to the burglary of October 26-27, 2001 and that Mossy in fact had sustained damages. It is undisputed that in November of 2001, after the Mossy burglary, Canal informed Cameras that it would cancel coverage for "non-compliance of inspection." Canal then performed a subsequent field audit of the operations of Cameras and reinstated the coverage on December 1, 2001 before the Mossy suit was filed. This action to continue coverage without making any attempt to place more restrictions on the coverage clearly indicates that Canal was well informed as to the scope of Cameras operations and well aware of the monitoring service provided to Mossy by Cameras.[2]
It is alleged that more than a year after being served with Mossy's petition, Cameras for the first time notified and tendered its defense and indemnity to its *608 general liability carrier, Canal, claiming that any Cameras exposure to Mossy for the alleged monitoring failures that were alleged in the Mossy petition was covered by Cameras' policy with Canal. Canal denied the tender, on the grounds that its policy covered neither Cameras' failure to properly monitor the surveillance equipment at Mossy's dealership nor any damages sustained by Mossy resulting from such monitoring failures. Contesting Canal's coverage denial, Cameras formally brought Canal into the litigation by the vehicle of a third party demand. Thereafter, both Cameras and Canal brought cross-motions for summary judgment. Canal sought dismissal from the litigation by summary judgment on the grounds that the Canal policy was inapplicable to the Mossy claim and that it had not duty to defend the action. Cameras filed a motion for summary judgment on the limited issue of Canal's duty to defend Cameras on the Mossy claims. This inaction on the part of Canal resulted in a preliminary default and ultimately a default judgment being entered against Cameras, which was appealed to this Court and reversed.
A careful review of the pertinent part of the contract between Mossy and Cameras clearly establishes that this was an indemnity policy not just a general liability policy. Under the principles of interpretation a contract cannot be construed to lead to absurd consequences. Magnon, 739 So.2d at 196. Also see Blackburn, 784 So.2d at 641. Furthermore, any ambiguity in the contract will be interpreted in favor of the insured. Succession of Fannaly, 805 So.2d at 1138. A careful review of the pertinent jurisprudence clearly supports that Canal has a duty to defend Cameras in the Mossy litigation. See Yount and Matheny Supra. Although, we are cognizant that the time to make a determination of coverage afforded under an indemnity policy is after there is a judgment on the merits,[3] we agree with the trial court that Canal has a duty to provide conflict counsel in the instant matter. Although Canal argues that the trial court erred in holding that it has a duty to defend Cameras, neither the policy nor the applicable law supports its position. Therefore, we find no error in the judgment of the trial and affirm the judgment.
AFFIRMED.
NOTES
[1] This matter went to trial in federal court and Judge Berrigan denied Cameras' motion for summary judgment alleging a duty to defend. It is not clear from the record the status of the Federal action nor the contradictory judgments on the duty to defend issue from Judge Barbier and Judge Berrigan. As these are not part of the trial court's official record we will not address the matter in this opinion.
[2] Cameras paid Canal premiums on this policy.
[3] See National Union Fire Insurance Company of Pittsburgh Pa. v. St. Bernard Parish Government, 2004 WL 877379 (E.D.La.) See also Quinlan v. Liberty Bank & Trust Co., 575 So.2d 336, 348-349 (La.1990).