**DENNIS M. JETER**       \*       **NO. 2021-CA-0048**

**VERSUS**       \*

      **COURT OF APPEAL**

**AMERON INTERNATIONAL**       \*

**CORPORATION, ET AL.**       **FOURTH CIRCUIT**

      \*

      **STATE OF LOUISIANA**

**\* \* \* \* \* \* \***

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-02167, DIVISION "L"
Honorable Kern A. Reese, Judge
\* \* \* \* \* \*
**Judge Terri F. Love**
\* \* \* \* \* \*
(Court composed of Chief Judge James F. McKay, III, Judge Terri F. Love, Judge
Edwin A. Lombard)

Thomas E. Balhoff
ROEDEL PARSONS BLACHE FONTANA PIONTEK & PISANO, ALC
8440 Jefferson Highway, Suite 301
Baton Rouge, LA 70809-3720

Judith R. Atkinson
ROEDEL PARSONS BLACHE FONTANA PIONTEK & PISANO, ALC
8440 Jefferson Highway, Suite 301
Baton Rouge, LA 70809-3720

Daniel T. Price
ROEDEL PARSONS BLACHE FONTANA PIONTEK & PISANO, ALC
8440 Jefferson Highway, Suite 301
Baton Rouge, LA 70809-3720


       COUNSEL FOR THIRD PARTY PLAINTIFF/APPELLANT


Julia A. Dietz
DEGAN, BLANCHARD & NASH
400 Poydras St., Suite 2600
New Orleans, LA 70130

James A. Rowell
DEGAN, BLANCHARD & NASH

400 Poydras St., Suite 2600
New Orleans, LA 70130

Genevieve K. Jacques
DEGAN, BLANCHARD & NASH
400 Poydras St., Suite 2600
New Orleans, LA 70130

Matthew F. Morgan
DEGAN, BLANCHARD & NASH
400 Poydras St., Suite 2600
New Orleans, LA 70130

Travis L. Bourgeois
DEGAN, BLANCHARD & NASH
400 Poydras St., Suite 2600
New Orleans, LA 70130

Tina L. Kappen
LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130

Stephen F. Butterfield
LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130

Leigh Ann Schell
ADAMS AND REESE LLP
701 Poydras Street, Suite 4500
New Orleans, LA 70139

COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**
**JUNE 23, 2021**

*TFL*

*JFM*

*EAL*

This case concerns the duty to defend in a workplace tort suit by Dennis M. Jeter against Turner Industries Group, L.L.C. ("Turner"). Turner filed a third-party demand against its comprehensive general liability insurers, Fireman's Fund Insurance Company ("FFIC") and United States Fidelity and Guaranty Company ("USF&G"), seeking that they provide Turner with a complete defense to Mr. Jeter's suit. Each insurer had paid defense costs for what they deemed to be their share, based on their policy periods and a time-on-the-risk formula. Turner filed a motion for partial summary judgment regarding the insurers' duty to defend and the insurers filed cross motions for summary judgment regarding the same and seeking complete dismissal of all claims. Turner argued that "Other Insurance" clauses in the policies issued by the insurers extended liability outside of the policy periods and that the trial court should adopt an exception holding insurers liable for periods of time in which insurance was unavailable to Turner. After a hearing, the trial court denied Turner's motion for partial summary judgment, granted FFIC's motion for partial summary judgment and USF&G's motion for summary

1

judgment on third-party demand, and dismissed all claims against FFIC and USF&G within Turner's demand. Turner now appeals this judgment.

Upon review, we find that the trial court correctly applied the time-on-the-risk formula to the present case, in keeping with precedent, and that there is no basis in this matter for extending liability for defense costs outside of the insurers' policy periods. Furthermore, we find that the "Other Insurance" clauses in the instant matter do not apply to defense costs. Accordingly, this judgment is affirmed.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The original petition by Mr. Jeter, filed February 25, 2019, alleged that he developed mesothelioma caused by injurious exposure to asbestos from approximately 1963 to 1979 at various work sites in Louisiana. The petition named thirty-six employers, premise owners, manufacturers, sellers, suppliers, contractors, and distributors as defendants. Turner, a Louisiana corporation, and its predecessors were named as employers/premise owners and sued for employer/strict/contractor/supplier liability. Beyond this, the petition does not describe how, when, or where Turner exposed Mr. Jeter to asbestos.

Of the sixteen years that Mr. Jeter alleged he was exposed to asbestos, Turner purchased insurance from FFIC and USF&G for at least twelve years. For the first year of alleged exposure, in 1963, Turner states that it purchased comprehensive general liability insurance from Home Insurance Company, which has since become insolvent. For March 1, 1964, to March 1, 1965, and from

2

March 1, 1967, to March 1, 1976, FFIC or its affiliates issued comprehensive general liability insurance policies to Turner. Turner also claims to have purchased insurance from FFIC for March 1, 1965, to March 1, 1967, but FFIC disputes that fact. Neither Turner nor FFIC have been able to locate the FFIC policies allegedly issued for this period of time. USF&G or its affiliates issued comprehensive general liability insurance policies to Turner for March 1, 1976, to March 1, 1979.

The FFIC and USF&G policies contained similar language, stating that the insurer will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury to which this insurance applies. The policies also state that the insurer "shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless." "Bodily injury" is defined as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." An "occurrence" is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The two policies also contain "Other Insurance" clauses, stating that:

> The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the Insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the Company's liability under this policy shall not be reduced by the existence of such other insurance.

3

The "Other Insurance" clauses further state that when "both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below." These provisions then lay out a formula for contribution by equal shares, if "all of such other valid and collectible insurance provides for contribution by equal shares." Alternatively, contribution by limits would be applied when "any of such other insurance does not provide for contribution by equal shares." The contribution by limits formula states that the insurer "shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

The suit brought by Mr. Jeter was settled by the end of 2019, with an agreement that Mr. Jeter did not sustain any exposures after December 31, 1976. On December 30, 2019, Turner filed a third-party demand against FFIC and USF&G, seeking a full and complete defense against Mr. Jeter's lawsuit and reimbursement of 18.63% of the defense costs. FFIC and USF&G had paid defense costs for what they each deemed to be their share, a computation based on the period of time in which Mr. Jeter alleged injury and in which they had contracted to provide insurance to Turner.

On May 26, 2020, Turner filed a motion for partial summary judgment regarding the insurers' duty to defend. USF&G and FFIC filed cross motions for

4

summary judgment regarding the same and seeking complete dismissal of all claims. USF&G and FFIC also jointly moved for leave to file a supplemental memorandum to supplement the record with a copy of a policy that was at issue in a separate case that their arguments relied upon. The trial court held a hearing on these matters and denied Turner's motion for partial summary judgment, granted FFIC's motion for partial summary judgment and USF&G's motion for summary judgment on third-party demand, and dismissed all claims against FFIC and USF&G within Turner's demand. The trial court denied the joint motion to supplement the record but granted a proffer of the joint motion and exhibit for the record. Turner, Appellant, timely appealed this judgment against Appellees, FFIC and USF&G.

## DISCUSSION

### *Standard of Review*

In reviewing a trial court ruling on summary judgment motions, this Court applies a *de novo* standard of review, applying the "same criteria that govern the district court's consideration of whether summary judgment is appropriate." *Green ex rel. Peterson v. Johnson*, 14-0292, p. 3 (La. 10/15/14), 149 So. 3d 766, 770. This standard of review requires analysis of pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, to determine if they show that no genuine issue as to a material fact exists, and that the mover is entitled to judgment as a matter of law. *Ricker v. Wieleman*, 464 So. 2d 891, 893 (La. App. 4 Cir. 1985). In cases involving cross motions for summary judgment, the Court

must "determine whether either party has established there are no genuine issues of material fact and it is entitled to judgment as a matter of law." *Duncan v. U.S.A.A. Ins. Co.*, 06-363, p. 4 (La. 11/29/06), 950 So. 2d 544, 547. Whether a fact is material depends on whether its existence or nonexistence is essential to the cause of action, "insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Mandina, Inc. v. O'Brien*, 13-0085, p. 9 (La. App. 4 Cir. 7/31/13), 156 So. 3d 99, 104 (collecting cases). "A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, no need for trial on that issue exists and summary judgment is appropriate." *Id.*

### *Issues for Review*

Appellant identifies three assignments of error: (1) that the trial court erred when it concluded that the "Other Insurance" clauses in the FFIC and USF&G policies, which policy language is materially different from the policy language relied upon by the Supreme Court in *Arceneaux v. Amstar Corp.*, 15-0588, p. 3 (La. 9/7/16), 200 So. 3d 277, 280, do not require the Insurers to provide a complete defense to Turner; (2) that the trial court erred when it applied the rationale underlying the Supreme Court's *Arceneaux* proration of defense costs holding to the much different, broad, vague, and indiscriminate allegations of the Petition here of Mr. Jeter; and (3) that the trial court erred by failing to adopt an "unavailability of insurance" exception under the circumstances of this case, in

6

which Turner did not voluntarily self-insure or deliberately go "bare" for any period at issue.

*Assignment of Error #1*

In its first assignment of error, Appellant states that the trial court erred when it concluded that the "Other Insurance" clauses in the FFIC and USF&G policies do not require the Insurers to provide a complete defense to Turner. Appellant contends that the "Other Insurance" clauses at issue in this case contain policy language that is materially different from the policy language relied upon by the Supreme Court in *Arceneaux*. *Id.*

*Arceneaux*, much like the instant case, concerned an insurer's duty to defend an employer in a long latency tort action. *Id.*, 15-0588, p. 1, 200 So. 3d at 279. In that case, a group of plaintiffs alleged hearing loss after many years of exposure to loud noises in their workplace. *Id.*, 15-0588, pp. 1-2, 200 So. 3d at 279-80. There, as in the instant matter, the insured employer filed a third-party demand against their insurer for defense costs and subsequently filed a motion for partial summary judgment seeking a declaration that the insurer owed the employer a complete defense against the claims. *Id.*, 15-0588, p. 3, 200 So. 3d at 280-81. The policy at issue in *Arceneaux* contained similar language to the policies in this case, with nearly identical language defining "bodily injury", "occurrence", and concerning the insurer's duty to defend. *Id.*, 15-0588, p. 3, 200 So. 3d at 280. The Court noted that in Louisiana, the fact "[t]hat indemnification is allocated pro rata is based in large part on Louisiana's adoption of the exposure theory in long latency

7

disease cases." *Id.*, 15-0588, p. 6, 200 So. 3d at 282. Under the exposure theory, the trigger for insurance coverage is the plaintiff's exposure to injurious conditions within the insurance policy period. *Id.* The theory "relies on the principle that an insurer will only be responsible within the terms of its policy for those damages arising out of the period the policy is in effect." *Id.*, citing *Norfolk Southern Corp. v. California Union Ins. Co.*, 02-0369, 02-0371, 02-0372, p. 42 (La. App. 1 Cir. 9/12/03), 859 So. 2d 167, 198.

In noting the state's approach to indemnification, the Court noted that there is no precedent in case law regarding the allocation of defense costs. *Arceneaux v. Amstar Corp.*, 15-0588, pp. 6-7 (La. 9/7/16), 200 So. 3d 277, 282. The Court proceeded to discuss long latency cases and the approaches taken by different jurisdictions in handling defense costs in such cases. *Id.*, 15-0588, pp. 7-11, 200 So. 3d at 282-85. Ultimately, the Court was persuaded by the reasoning of *Forty– Eight Insulations*, which held that:

> [t]he duty to defend arises solely under contract. An insurer contracts to pay the entire cost of defending a claim which has arisen within the policy period. The insurer has not contracted to pay defense costs for occurrences which took place outside the policy period. Where the distinction can be readily made, the insured must pay its fair share for the defense of the non-covered risk.

*Insurance Co. of North America v. Forty–Eight Insulations, Inc.*, 633 F. 2d 1212, 1224-25 (6th Cir. 1980).

The Court examined the contract between the parties and found that "the words of the insurance contract at issue are clear and unambiguous" and that "the policy language limits coverage for bodily injury to that which occurs during the

8

policy period." *Arceneaux*, 15-0588, p. 12, 200 So. 3d at 286. However, the Court stated that "the policy language in this case that supports a pro rata allocation of defense costs may not appear in another policy, requiring a different result with regard to responsibility for defense costs." *Id.*, 15-0588, p. 13, 200 So. 3d at 286. Additionally, defense costs "may need to be determined on a case by case basis, according to the precise language of the insurance contract at issue." *Id.* The policy language at issue in this case is similar to the policy language examined in *Arceneaux* and hence would require a similar result. However, Appellant contends that the existence of "Other Insurance" clauses in its contracts with Appellees differentiates the two cases. Appellees counter that the *Arceneaux* policy also contained an "Other Insurance" clause identical to the "Other Insurance" clauses here, and offered evidence of such in their proffer. As it appears that parties in *Arceneaux*, and subsequently the Court, did not directly address the "Other Insurance" clause in that case, we must examine the substance of these clauses in the present matter.

Appellant concedes that "bodily injury" during the policy period is the required trigger for coverage from Appellees. However, Appellant argues that the "Other Insurance" clauses contemplate a different allocation of coverage in situations where "both this insurance and other insurance apply to the loss on the same basis." Appellant argues that "loss" refers to any monetary amount paid in connection with a single claim, including defense costs, and that "loss" is not synonymous with bodily injury. Appellant also argues that "loss" necessarily

9

follows manifestation, which can occur a long time after the initial exposure and in an entirely different policy period than "bodily injury." Appellant contends that this language, taken together, indicates that Appellees can be liable for coverage for injuries that span multiple policy periods, including for portions of injuries that happened during years in which they did not issue a policy. Appellant further contends that because the "Other Insurance" clause distributes liability only to insurers and not the insured, no defense costs can be assigned to it.

"An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Mayo v. State Farm Mut. Auto. Ins. Co.*, 03-1801, p. 3 (La. 2/25/04), 869 So. 2d 96, 99. The language used in a policy should be construed using "their plain, ordinary and generally prevailing meaning." *Id.*; La. C.C. art. 2047. An insurance contract "should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms to achieve an absurd conclusion." *Mayo*, 03-1801, p. 3, 869 So. 2d at 99. Nor should construction of an insurance contract be an "exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent." *Mayo*, 03-1801, pp. 3-4, 869 So. 2d at 99-100; La. C.C. art. 2046. However, "if any doubt or ambiguity exists as to the meaning of a provision in an insurance policy, it must be construed in favor of the insured and against the insurer." *Gibbs Construction,*

*L.L.C. v. National Rice Mill, L.L.C.*, 17-0113, p. 11 (La. App. 4 Cir. 2/21/18), 238 So. 3d 1033, 1041.

The "Other Insurance" clauses in this case state alternate formulas for apportioning liability among "valid and collectible insurance" "[w]hen both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent." Appellees' insuring agreements each define when insurance is valid and collectible – when triggered by "bodily injury" during the policy period. For example, these "Other Insurance" clauses would be applicable here if two insurers both provided primary coverage to Turner for 1967, one of the years in which Mr. Jeter was allegedly exposed to asbestos. Read according to their plain meaning, the "Other Insurance" clauses provide guidance for instances in which more than one policy applies to a loss at the same time. However, the Appellees' policies were non-concurrent, covering different policy periods, and thus cannot be said to be "valid and collectible" insurance that "appl[ies] to the loss on the same basis." To argue otherwise, that insurers providing coverage to an insured at entirely different points in time are now exclusively liable for exposure to injurious conditions outside of the policy periods they contracted for would essentially render policy periods meaningless and strain the clear terms of the contracts. Therefore, we find that under the language of these policies and the factual scenario in the instant matter, the "Other Insurance" clauses do not apply to defense costs.

11

Appellant makes a further attempt to distinguish the policy language in *Arceneaux* from the language at issue, contending that the pro rata approach taken in *Arceneaux* was premised on that case's strict limitation of bodily injury to injury "during the policy period." *Arceneaux*, 15-0588, p. 3, 200 So. 3d at 280. Appellant states that unlike in *Arceneaux*, the present case extends liability to include death outside of the policy period. In fact, the definition of "bodily injury" in *Arceneaux* is similar to the definitions in this case. *Id.* The definition of bodily injury in *Arceneaux* is "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." *Id.* The definition of bodily injury in Appellees' policies is "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." That these policies contain virtually the same language undermines Appellant's attempt to distinguish the cases and strengthens the precedential weight of the *Arceneaux* holding.

In addition, "the duty to defend arises solely under contract." *Id.*, 15-0588, p. 12, 200 So. 3d at 286. In *Arceneaux*, as in the instant matter, the words of the insurance policy defining the duty to defend are "clear and unambiguous" in creating a duty to defend any suit seeking damages on account of "bodily injury." *Id.* As bodily injury in both cases is limited to that which occurs during the policy period, the duty to defend is likewise limited to each Appellee's periods of policy coverage. Therefore, the trial court did not err in dismissing Appellant's motion for partial summary judgment, granting Appellees' motions for summary

judgment, and concluding that the "Other Insurance" clauses did not create an obligation to pay defense costs outside of the scope of Appellees' policies.

*Assignment of Error #2*

In its second assignment of error, Appellant states that the trial court erred when it applied the rationale underlying the Supreme Court's *Arceneaux* proration of defense costs holding to the much different, broad, vague, and indiscriminate allegations of the Petition of Mr. Jeter.

Appellant argues that the rationale supporting *Arceneaux's* holding should be restricted to its unique facts. Appellant states that *Arceneaux* involved over one-hundred employees injured by exposure to loud noise over sixty-five years at a single location, with only one insurer liable for coverage, and only for twenty-six months out of the entire sixty-five year period. *Id.*, 15-0588, pp. 1-2, 200 So. 3d at 279-80. Appellant believes that the *Arceneaux* Court predicated its opinion on the ease with which proration could be effected between the one insurer and the insured. Appellant also argues that the *Arceneaux* Court was motivated by the belief that it would be unfair to hold an insurer liable for 100% of defense costs when it only provided coverage for 3% of the exposure period.

Appellant reasons that the breadth of the allegations in this case, in contrast to the concrete facts in *Arceneaux*, make it impossible to demarcate exactly when the exposure occurred. Without that certainty, Appellant states that it is possible Mr. Jeter's exposure to asbestos occurred solely in the years where coverage exists from Appellees and it is consequently impossible to allocate costs with any

reasonable means. Appellant also argues that because the settlement with Mr. Jeter contained an agreement that the exposure period fell between October 1, 1967, and December 31, 1976, periods in which Appellees had policies in place providing liability coverage to Appellant, Appellees are entirely liable for defense costs. Appellant asserts that under these circumstances, the test is not whether the allegations unambiguously assert coverage, but "whether they do not unambiguously exclude coverage." *Mossy Motors, Inc. v. Cameras America*, 04-0726, p. 6 (La. App. 4 Cir. 3/2/05), 898 So. 2d 602, 606.

The *Arceneaux* Court stated that "the pro rata allocation scheme is an equitable system, that can be readily used in long latency disease claims in Louisiana." *Arceneaux*, 15-0588, p. 13, 200 So. 3d at 286-87. Indeed, *Arceneaux* analyzed long latency injury cases in depth and examined approaches in other jurisdictions before concluding that the espousal of the exposure theory in Louisiana "provides a clear way to apportion defense costs." *Id.*, 15-0588, p. 13, 200 So. 3d at 287. *Arceneaux* concluded that while the "duty to defend is broader than the duty to indemnify, neither obligation is broader than the policy's coverage period in the context of long latency disease cases that trigger occurrence-based policies." *Id.*, 15-0588, p. 13, 200 So. 3d at 286.

Appellant emphasizes language in *Mossy Motors, Inc.*, stating that "the test is not whether the allegations unambiguously assert coverage, but rather whether they do not unambiguously exclude coverage." *Mossy Motors, Inc.*, 04-0726, p. 6,

14

898 So. 2d at 606.  However, that language is a condensation of the full rule.  The entire rule states that:

> [t]he issue of whether a liability insurer has the duty to defend a civil action against its insured is determined by application of the 'eight-corners rule,' under which an insurer must look to the 'four corners' of the plaintiff's petition and the 'four corners' of its policy to determine whether it owes that duty. *Vaughn v. Franklin*, 00-0291, p. 5 (La. App. 1 Cir. 3/28/01), 785 So. 2d 79, 84. Under this analysis, the factual allegations of the plaintiff's petition must be liberally interpreted to determine whether they set forth grounds which raise even the possibility of liability under the policy. *Id.* In other words, the test is not whether the allegations unambiguously assert coverage, but rather whether they do not unambiguously exclude coverage.

*Mossy Motors, Inc.*, 04-0726, p. 6, 898 So. 2d at 606.

In *Mossy Motors, Inc.*, the insurer rejected any duty to defend and the Court carefully scrutinized the facts alleged in the petition and the language of the policy to determine whether a duty to defend existed.  *Id.*, 04-0726, pp. 7-10, 898 So. 2d at 607-08.  In this case, Appellees readily acknowledge that the duty to defend exists, acknowledge the applicability of *Mossy Motors, Inc.*, and rely on that case to establish that their duty to defend is limited to the "four corners" of Mr. Jeter's petition and the "four corners" of their policies.  *Id.*, 04-0726, p. 6, 898 So. 2d at 606.  The "four corners" of the petition allege seventeen years, or two-hundred-and-four months of exposure to asbestos.  *Id.*, 04-0726, p. 6-7, 898 So. 2d at 606.  The policies at issue in this case expressly limit coverage to bodily injury occurring during the policy periods and under *Arceneaux,* Appellees' time on the risk is based on these policy periods.  *Arceneaux*, 15-0588, pp. 17-18, 200 So. 3d at 289.  Therefore, a straightforward and reasonable basis for allocating defense costs does exist.   Appellee FFIC provided coverage for ten of the seventeen years and its

15

time on the risk is thus 121 months, amounting to a pro rata share of 58.82% of defense costs. Appellee USF&G provided coverage for forty-six months of the total exposure period, amounting to a pro rata share of 22.55% of defense costs.

Appellant's argument that evidence adduced during discovery and the settlement agreement indicate that there was potential exposure only during periods covered by Appellees is not relevant, as it is the allegations of the petition and the language of the insurance policies that control the duty to defend. *Mossy Motors, Inc.*, 04-0726, pp. 6-7, 898 So. 2d at 606-07.

Although Appellant argues that applying *Arceneaux* leads to an unjust windfall for insurers, this case presents the precise scenario contemplated within *Arceneaux* – a long latency disease claim due to workplace exposure to asbestos. Application of the pro rata method in this matter comports with the parties' "reasonable expectations," as the terms of the contracts, discussed in the preceding section, ensure that "neither party could reasonably expect that the insurer was liable for losses that occurred outside the policy coverage periods." *Arceneaux*, 15-0588, p. 13, 200 So. 3d at 286. To hold otherwise and absolve Appellant of any liability for defense costs for the time it was not insured would create "a disincentive to insureds to purchase uninterrupted insurance coverage and provid[e] a windfall to companies that fail to obtain continuous coverage." *Id.*, 15-0588, p. 14, 200 So. 3d at 287. Consequently, the trial court did not err in dismissing Appellant's motion for partial summary judgment, granting Appellees'

motions for summary judgment, and applying the *Arceneaux* formula prorating defense costs.

### *Assignment of Error #3*

In its third assignment of error, Appellant states that the trial court erred by failing to adopt an "unavailability of insurance" exception under the circumstances of this case, in which Turner did not voluntarily self-insure or deliberately go "bare" for any period at issue.

Heretofore, the "unavailability of insurance" exception has not been applied in this jurisdiction. In *Arceneaux*, the Court noted that in jurisdictions ascribing to the pro rata allocation method for defense costs, "if the insured has periods of non-coverage, the insured is responsible for its pro rata share." *Id.*, 15-0588, p. 7, 200 So. 3d at 282. To that end, *Arceneaux* held the insured in that case liable for the period of time in which it went bare. *Id.*, 15-0588, p. 18, 200 So. 3d at 289. Appellant argues that this holding in *Arceneaux* pivoted on the fact that the insured there chose to be self-insured for all but 26 of the 780 months in question. Appellant also argues that it is differently situated, as it never chose to go bare. Instead, Appellant claims that insurance coverage is unavailable because it purchased insurance from a company that has since become insolvent and because it purchased policies from FFIC that have not been located.

However, even in the case cited by Appellant as applying the unavailability exception, insurance was entirely unavailable because insurers had ceased selling the insurance sought by the insured. *R.T. Vanderbilt Company, Inc. v. Hartford*

17

*Accident and Indemnity Company*, 156 A. 3d 539, 589-93 (Conn. App. 2017). In this case, Appellant does not argue that insurance was unavailable on the market. In actuality, Appellant claims to have purchased insurance for the entirety of the exposure time. Additionally, the unavailability exception was explicitly evaluated and rejected by the *Arceneaux* Court, which noted that nationally, in cases where "it has been determined that the insured is self-insured for part of the coverage period, the weight of authority is that the insured must bear a pro rata share of the defense costs." *Arceneaux*, 15-0588, pp. 11-12, 200 So. 3d at 285 (citing BARRY R. OSTRAGER & THOMAS R. NEWMAN, HANDBOOK ON INSURANCE COVERAGE DISPUTES, § 6.02(a) (2) (17th ed. 2014)). In holding the insured liable for defense costs for non-covered periods in *Arceneaux*, the Court pointed to its holding in *Southern Silica* for support. *Southern Silica of Louisiana, Inc. v. Louisiana Ins. Guar. Ass'n.*, 07-1680, pp. 13-14 (La. 4/8/08), 979 So. 2d 460, 469. *Southern Silica* held "[a]ccording to the exposure theory and its component pro rata share allocation, coverage for exposure outside the policy period could not be demanded of the solvent insurers" and solvent liability insurers were not required to fill the gap left by another insurer's insolvency. *Id.*, 07-1680, p. 12, 979 So. 2d at 468. Likewise, "the vast majority of decisions applying a pro rata allocation methodology require that the policyholder contribute for 'bare' periods regardless of whether applicable insurance was 'available' or 'unavailable.'" SCOTT M. SEAMAN & JASON R. SCHULZE, ALLOCATION OF LOSSES IN COMPLEX INSURANCE COVERAGE CLAIMS § 4:3 ALLOCATION (December 2020 Update).

In regards to the missing policies Appellant alleges to have purchased from FFIC, Appellant has offered an affidavit of its Chief Administrative Officer, Rick Scardina. In his affidavit, Mr. Scardina stated that he has been employed by Appellant since 1991 and that, upon information and belief, Appellant purchased general liability insurance from Appellee FFIC from March 1, 1965, to March 1, 1967. Under La. C.C.P. art. 967, affidavits must be based on personal knowledge. "The purpose of the 'personal knowledge' requirement in this article is to confine the scope of an affidavit to 'facts which the affiant saw, heard, or perceived with his own senses*." Indulge Island Grill, L.L.C. v. Island Grill, L.L.C.*, 16-1133, p. 12 (La. App. 4 Cir. 5/10/17), 220 So. 3d 154, 162 (citing *Hibernia Nat'l Bank v. Rivera*, 07-962, pp. 8-9 (La. App. 5 Cir. 9/30/08), 996 So. 2d 534, 539). Furthermore, "[p]ortions of affidavits not based on personal knowledge of the affiant should not be considered by the trial court in deciding a motion for summary judgment." *Indulge Island Grill*, 16-1133, p. 12, 220 So. 3d at 162 (quoting *Hibernia Nat'l Bank v. Rivera*, 07-962, p. 9, 996 So. 2d at 540). Mr. Scardina only began working for Appellant twenty-four years after Appellant allegedly purchased the missing FFIC policies and offered no other basis for his knowledge of these policies. Ergo, that portion of Mr. Scardina's affidavit fails to fulfill the personal knowledge requirement of the article and cannot be considered. *Id.* In assessing the liability for defense costs for the period of March 1, 1965, to March 1, 1967, Appellant is considered self-insured and liable for defense costs for that period. *Southern Silica*, 07-1680, p. 12, 979 So. 2d at 468.

The trial court did not err in dismissing Appellant's motion for partial summary judgment, granting Appellees' motions for summary judgment, and refraining from adopting an "unavailability of insurance" exception.

## CONCLUSION

For the reasons set forth herein, we find that the trial court did not err in denying Appellant's motion for partial summary judgment, granting Appellees' motions for summary judgment and dismissing all claims against Appellees. As such, the judgment of the trial court is affirmed.

**AFFIRMED**