<p style="color:red; text-align:center">CORRECTED COPY</p>

| | | |
|---|---|---|
| **CHOICE FOUNDATION** | * | **NO. 2022-C-0411** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **LAW INDUSTRIES, LLC** | * | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

* * * * * * *

ON SUPERVISORY WRIT FROM THE
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-04985, DIVISION "0"
Honorable D. Nicole Sheppard,
* * * * * *
**Judge Rachael D. Johnson**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Joy Cossich Lobrano, Judge Sandra Cabrina Jenkins, Judge Paula A. Brown, Judge Rachael D. Johnson)

**LOVE, C.J., CONCURS IN THE RESULT**
**LOBRANO, J., DISSENTS**

Céleste D. Elliott
Shaundra M. Schudmark
LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130

      COUNSEL FOR APPLICANT/DEFENDANTS

Kerry J. Miller
Rebekka C. Veith
C. Hogan Paschal
Paul C. Thibodeaux
Danielle C. Teutonico
FISHMAN HAYGOOD, LLP
201 St. Charles Avenue, 46th Floor
New Orleans, LA 70170

Christopher K. LeMieux
Jonathan S. Forester
Alex S. Dunn, Jr.
1100 Poydras Street, Suite 1100
New Orleans, Louisiana 70163

      COUNSEL FOR PLAINTIFFS/RESPONDENTS

**WRIT GRANTED; RELIEF DENIED**
**October 26, 2022**

Applicants/Defendants, The Travelers Indemnity Company and Travelers Property Casualty Company of America ("Travelers"), solely in their capacity as alleged insurers of Tuna Construction, LLC ("Tuna"), seek review of the trial court's May 25, 2022 judgment denying, in part, Travelers' motion for summary judgment and granting, in part, Tuna's cross-motion for partial summary judgment. For the reasons that follow, we grant the Writ Application but deny the relief requested.

### Facts and Procedural History

This is an insurance coverage dispute arising from construction work at a school campus on Carollton Avenue in New Orleans, Louisiana, known as the Lafayette Academy Charter School ("Lafayette Academy") that Choice Foundation, a charter school management organization, operates. The Recovery School District leased the campus to Choice Foundation to operate the Lafayette Academy.

During the 2016-2017 school year, the Recovery School District executed a contract with Tuna to act as general contractor for the first phase of construction.

1

Tuna subcontracted with V. Keeler & Associates ("Keeler") to perform asbestos abatement work. With respect to that work, Travelers issued Umbrella Insurance Policy No. DT-CO-6G506887-IND-17 (the "Policy"), naming Tuna as a direct insured. The Policy contains the following asbestos exclusion:

> This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the actual or alleged presence or actual or alleged or threatened dispersal of asbestos, asbestos fibers or products containing asbestos, provided that the injury or damage is caused or contributed to by the hazardous properties of asbestos. This includes:
>
> a. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and
>
> b. Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

In March of 2017, the Louisiana Department of Environmental Quality ("LDEQ") visited Lafayette Academy and observed multiple asbestos violations. Plaintiffs Choice Foundation and Orleans Parish School Board ("OPSB") (collectively, "Plaintiffs") filed suit against numerous construction defendants on May 10, 2019, including Tuna and Keeler, seeking damages for contamination of equipment, furniture, and classroom materials as well as remediation expenses, damages for disruption of operations, relocation expenses from the removal of asbestos-containing materials from Lafayette Academy, and reputational damages stemming from the release of the LDEQ report to the public in June 2018.

On August 18, 2021, Travelers filed Travelers' motion for summary judgment ("Travelers' Motion"), seeking dismissal of Plaintiffs' claims as well as Tuna's cross-claim based on the asbestos exclusion in the Policy issued to Tuna. On October 19, 2021, Tuna filed Tuna's partial cross-motion for summary

2

judgment ("Tuna's Partial Cross-Motion") and an opposition to Travelers' Motion. On November 18, 2021, Plaintiffs filed their opposition to Travelers' Motion. At the hearing on March 10, 2022, the trial court denied in part Travelers' Motion and granted in part Tuna's Partial Cross-Motion. The trial court rendered judgment concerning Travelers' Motion and Tuna's Partial Cross-Motion on May 25, 2022. The trial court judgment granted Travelers' Motion "as to claims falling within cited asbestos exclusion" but denied the Motion "as it relates to the other claims." Additionally, the trial court judgment granted Tuna's Partial Cross-Motion "as it relates to requiring Travelers to provide a defense to Tuna" and denied Tuna's Partial Cross-Motion "as to claims falling within cited asbestos exclusion."

## Discussion

### I. Travelers' Motion to Strike

As a preliminary matter, Travelers filed a Motion to Strike concerning certain Exhibits that Tuna included in Tuna's Opposition to Travelers' Writ Application. In the Motion to Strike, Travelers asserts that this Court cannot consider Exhibits C and D because they were not filed in the district court in support of or in opposition to any motions for summary judgment in accordance with La. C.C.P. 966(D)(2). This Court agrees. La. C.C.P. art. 966(D)(2) provides that the only documents that this Court can consider are those filed in support of or in opposition to motions for summary judgment. Accordingly, Travelers' Motion to Strike is granted, and it is ordered that Tuna's Exhibits C and D attached to its Opposition be struck from the record.

### II. Travelers' Writ Application

Turning to Travelers' Writ Application, Travelers contends that the trial court erred when it failed to adhere to its own prior rulings as well as this Court's decision in *Choice Foundation v. Law Industries, LLC*, ("*Choice Foundation I*") pursuant to the law of the case doctrine. 21-0431 (La. App. 4 Cir. 3/2/22), 336 So.3d 501. Travelers further argues that district court erred in denying Travelers' Motion in part and granting Tuna's Partial Cross-Motion in part. We disagree.

"Appellate courts review the grant or denial of a motion for summary judgment *de novo*, using the same criteria applied by trial courts to determine whether summary judgment is appropriate." *Chatelain v. Fluor Daniel Const. Co.*, 14-1312, p. 3 (La. App. 4 Cir. 11/10/15), 179 So.3d 791, 793 (quoting *Mandina, Inc. v. O'Brien*, 13-0085, p. 8 (La. App. 4 Cir. 7/31/13), 156 So.3d 99, 104). The standard for granting a motion for summary judgment is set forth in La. C.C.P. art. 966(A)(3), which provides that, "[a]fter an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). Generally, the burden of proof on a motion for summary judgment lies with the mover. If the moving party will not bear the burden of proof on the issue at trial, however, the mover need only point out an "absence of factual support for one or more essential elements of the adverse party's claim, action, or defense." La. C.C.P. art. 966(D)(1). The burden of proof remains on "the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.* If the non-moving party fails to do so, then summary judgment will be granted.

4

As to Travelers' first argument, while the law of the case doctrine is a "discretionary guide," its main purpose is "to avoid relitigation of the same issue; to promote consistency of result in the same litigation; and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue." *Washington v. Aetna Life Ins. Co.*, 03-0790, p. 3 (La. App. 4 Cir. 7/2/03), 853 So.2d 34, 36-37 (citation omitted). It is not, however, "applied in cases of palpable error or where, if the law of the case were applied, manifest injustice would occur." *Id.* at p. 3, 853 So.2d at 37 (citing *Glenwood Hosp., Inc. v. La. Hosp. Serv., Inc.*, 419 So.2d 1269, 1271 (La. App. 1 Cir. 1982)). We agree with the trial court's decision not to follow this Court's prior ruling in *Choice Foundation I* because, as explained in more detail *infra*, this case is factually distinguishable from *Choice Foundation I*. 21-0431 (La. App. 4 Cir. 3/2/22), 336 So.3d 501. Accordingly, we find that the law of the case doctrine is inapplicable to the instant action.

Travelers next argues that the district court erred in denying Travelers' Motion in part and granting Tuna's Partial Cross-Motion in part. Travelers contends that this Court has already determined that all of Plaintiffs' allegations in their petition are asbestos-related and that, accordingly, the trial court erred when it ruled that Travelers had a duty to provide Tuna with a defense for non-asbestos related claims. We disagree.

In *Choice Foundation I*, Tuna appealed the trial court's granting of a motion for summary judgment in favor of one of Keeler's insurers, dismissing Tuna's cross-claims against the insurer due to the existence of an asbestos exclusion in the policy at issue. 21-0431 (La. App. 4 Cir. 3/2/22); 336 So.3d 501. Tuna's arguments were remarkably similar to those in the instant Writ Application,

including that Plaintiffs' petition contains allegations that fall outside the scope of the asbestos policy at issue as well as that Tuna never performed any of the asbestos abatement work. *Id.* at pp. 6-7, 336 So.3d at 506-07. In affirming the trial court's ruling, this Court found that "all allegations of Tuna's negligence within the petition are asbestos-related," Tuna's claims were "unambiguously excluded from coverage," and that Keeler's insurer did not have a duty to defend against Plaintiffs' claims. *Id.* at p. 8, 11, 336 So.3d at 507, 509.

We find that *Choice Foundation I* is factually distinguishable from the case *sub judice*. While this Court's language in *Choice Foundation I* broadly characterizes "all allegations of Tuna's negligence" in Plaintiffs' petition to be "asbestos-related," this Court's prior inquiry was narrower in scope than the instant action. This Court's sole concern in *Choice Foundation I* was to determine whether an insurer for Keeler, an asbestos abatement subcontractor, owed a duty to defend or indemnify Tuna. *Id.* p. 8, 336 So.3d at 507. Here, the issue is whether Travelers, as an insurer for Tuna, the general contractor for the first phase of construction at Lafayette Academy, owes Tuna a duty to defend and indemnify against Plaintiffs' suit. Tuna's more expansive role concerning construction at Lafayette Academy renders summary judgment inappropriate as to whether Travelers owes Tuna a duty to defend against Plaintiffs' claims.

Prior jurisprudence supports our conclusion that summary judgment is inappropriate in this suit, as "Louisiana has a long history of cases, which assert an insurer's duty to defend its insured." *Mossy Motors, Inc. v. Cameras Am.*, 04-0726, p. 5 (La. App. 4 Cir. 3/2/05), 898 So.2d 602, 606 (citation omitted). "The issue of whether a liability insurer has the duty to defend a civil action against its insured is determined by application of the 'eight corners rule,' under which an

6

insurer must look to the 'four corners' of the plaintiff's petition and the 'four corners' of its policy to determine whether it owes that duty." *Plaia v. Stewart Enter., Inc.*, 2014-0159, p. 35 (La. App. 4 Cir. 10/26/16), 229. So.3d 480, 504 (citation omitted). "Generally the insurer's obligation to defend suits against its insured is broader than its liability for damage claims" because "[t]he insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage." *Yount v. Maisano*, 627 So.2d 148, 153 (La. 1993) (citations omitted). "The allegations of the petition should be liberally construed in determining whether they set forth grounds which bring the claims within the scope of the insurer's duty to defend suit against its insured." *Mossy Motors*, 04-0726, p. 5, 898 So.2d at 606. "[T]he duty to defend does not depend upon the outcome of the suit, as it does where the purported source of the duty is an indemnity agreement; rather, where the pleadings disclose 'even a possibility of liability' under the contract, the duty is triggered." *Suire v. Lafayette City-Parish Consol. Gov't*, 04-1459, p. 18 (La. 4/12/05), 907 So.2d 37, 52 (quoting *Steptore v. Masco Constr. Co.*, 93-2064, p. 8 (La. 8/18/94), 643 So.2d 1213, 1218).

Concerning the 'four corners' of Plaintiffs' petition, Tuna contends that Plaintiffs' petition contains numerous allegations unrelated to asbestos, including:

    a. The failure of Jacobs, N-Y, Tuna, and Keeler to properly oversee, manage, coordinate and/or complete the project in a safe and compliant manner led to Choice[] [Foundation's] and OPSB's damages.

    b. Tuna was negligent, causing damage to Choice [Foundation] and OPSB by, including but not limited to, failing to fallow generally accepted construction practices and by negligently performing renovations/work, by failing to properly oversee and

7

undertake the construction of its work, by causing or contributing to delays, and by failing to adhere to standards for a reasonably prudent contractor in the Orleans Parish area.

c. "negligence . . . with respect to the construction;"
d. complaints of "smells and sounds that disrupted teaching;"
e. "fail[ing] to submit necessary reports;"
f. failure "to properly oversee, manage, coordinate, and/or complete the project;"
g. "failing to follow generally accepted construction practices;"
h. "negligently performing renovations/work;"
i. "failing to properly oversee and undertake the construction of its work;"
j. "causing and/or contributing to delays;"
k. "failing to adhere to standards for a reasonably prudent contractor in the Orleans Parish area;" and
l. failing to "complete a schedule of renovation project in a safe and untimely manner." [sic]

Tuna further contends that Plaintiffs' petition alleges that Phase 1, for which Tuna was hired as a general contractor, consisted of "various improvements, including, but not limited to, replacing windows" at Lafayette Academy. Regarding the 'four corners' of the Policy, it is undisputed that the plain language of the asbestos exclusion excludes coverage for any "'property damage' . . . arising out of the actual or alleged presence . . . of asbestos."

Liberally construing Plaintiffs' allegations, in light of Tuna's role as the general contractor for the project, this Court concludes that summary judgment is inappropriate because genuine issues of material fact exist concerning the possibility of coverage for allegations which fall outside the scope of the Policy's asbestos exclusion. Thus, the trial court correctly concluded Travelers had a duty to defend Tuna in the instant action concerning non-asbestos related claims.

### Decree

For the foregoing reasons, we grant the Writ application but deny the relief requested. Further, Travelers' Motion to Strike is granted. It is ordered that Tuna's Exhibits C and D attached to its Opposition be struck from the record.

**WRIT GRANTED; RELIEF DENIED**